GEORGE J. ZWEIBEL  #7499
Law Office of George J. Zweibel
45-3590A Mamane Street
Honoka'a, Hawai'i 96727
Telephone:  (808) 775-1087
Facsimile:  (808) 775-1089
Email:  george.zweibel@hawaiiantel.net

JAMAE K. K. KAWAUCHI  #7289
Attorney at Law
A Limited Liability Law Company
American Savings Bank Building
100 Pauahi Street, Suite 201
Hilo, Hawai'i 96720
Telephone:  (808) 969-3200
Facsimile:  (808) 969-3299
Email:  Jamae@kawauchilaw.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 09 2009

at ____ o'clock and ____ min. ____ M.
SUE BEITIA, CLERK

Attorneys for Plaintiffs
ANNETTE KUULEI AGUSTIN,
GEORGE BRUNO AGUSTIN SR., and
JEFFREY KANE AGUSTIN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ANNETTE KUULEI AGUSTIN, GEORGE BRUNO AGUSTIN SR., and JEFFREY KANE AGUSTIN, <br><br> Plaintiffs, <br><br> vs. <br><br> PNC FINANCIAL SERVICES GROUP, INC., SUCCESSOR BY MERGER TO NATIONAL CITY BANK, FIRST AMERICAN TITLE COMPANY, INC., RONALD P. KANAKANUI, dba | CIVIL NO. CV09 00423 SOM KSC <br><br> **COMPLAINT; EXHIBITS "A" THROUGH "E"; DEMAND FOR JURY TRIAL; SUMMONS** |

**ORIGINAL**

OHANA FINANCIAL GROUP, JOHN )
DOES 1-10, JANE DOES 1-10, and )
DOE CORPORATIONS, )
PARTNERSHIPS AND OTHER )
ENTITIES 1-10, )
)
        Defendants. )
)
_____ )

## COMPLAINT

Plaintiffs, ANNETTE KUULEI AGUSTIN, GEORGE BRUNO AGUSTIN

SR., and JEFFREY KANE AGUSTIN (hereinafter collectively "Plaintiffs"), by

and through their attorneys, George J. Zweibel and Jamae K.K. Kawauchi, bring

the following Complaint against Defendants PNC FINANCIAL SERVICES

GROUP, INC., SUCCESSOR BY MERGER TO NATIONAL CITY BANK,

FIRST AMERICAN TITLE COMPANY, INC., and RONALD P. KANAKANUI,

dba OHANA FINANCIAL GROUP (hereinafter collectively "Defendants"), and

allege and aver as follows:

## INTRODUCTION

1.    This action is brought by consumers concerning a predatory mortgage

loan – split into two "separate" loans – that was made to strip away their home

equity by luring an unsophisticated and vulnerable borrower into an unaffordable

loan that would result in foreclosure and the loss of Plaintiffs' family home.

Among other wrongful acts, numerous false representations made the loan appear

to be affordable when just the opposite was true.

2

2.     This Complaint is filed and these proceedings are instituted under the Truth in Lending Act (hereinafter "TILA"), 15 U.S.C. § 1601 et seq., to enforce Plaintiffs' rescission of the subject loan(s) and to recover actual and statutory damages, reasonable attorneys' fees, and costs of suit by reason of violations of that Act and the implementing regulations the Federal Reserve Board adopted pursuant thereto, published at 12 C.F.R. Part 226 and commonly known as "Regulation Z."

3.     This Complaint is also filed and these proceedings are also instituted under the Credit Repair Organizations Act (hereinafter "CROA"), 15 U.S.C. § 1679 et seq., to recover actual and punitive damages, reasonable attorneys' fees, and the costs of the action by reason of Defendant RONALD P. KANAKANUI, dba OHANA FINANCIAL GROUP's violations of that Act.

4.     This Complaint is also filed and these proceedings are also instituted under the Real Estate Settlement Procedures Act (hereinafter "RESPA"), 12 U.S.C. § 2601 et seq., to recover actual and statutory damages, costs and reasonable attorneys' fees by reason of Defendant PNC FINANCIAL SERVICES GROUP, INC., SUCCESSOR BY MERGER TO NATIONAL CITY BANK's violations of that Act.

5.     This Complaint also seeks to recover actual and statutory damages, injunctive and other relief, reasonable attorneys' fees, and costs pursuant to

Hawai'i unfair and deceptive trade practices statutes, Hawaii Revised Statutes (hereinafter "H.R.S.") Chapters 480 and 481A, as well as rescission and actual and punitive damages in connection with fraud and other state claims.

6. This Complaint seeks injunctive relief to the extent it is needed to avert the likelihood of injury to Plaintiffs during the pendency of this action and to preserve the possibility of effective final relief.

## JURISDICTION

7. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. § 1640(e), 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337. The supplemental jurisdiction of this Court under 28 U.S.C. § 1367 is invoked over Counts IX through XVII of the Complaint, which arise under H.R.S. Chapters 480 and/or 481A or assert other state claims. Jurisdiction of the state claims is proper because the factual matters underlying the federal and state claims are closely related, making disposition of all claims proper and necessary.

## PARTIES

8. Plaintiff ANNETTE KUULEI AGUSTIN (hereinafter "Plaintiff ANNETTE AGUSTIN") is a natural person residing in the State of Hawai'i and is the wife of Plaintiff GEORGE BRUNO AGUSTIN SR. and mother of Plaintiff JEFFREY KANE AGUSTIN. Plaintiff ANNETTE AGUSTIN has had only limited formal education and is financially unsophisticated.

9.     Plaintiff GEORGE BRUNO AGUSTIN SR. (hereinafter "Plaintiff GEORGE AGUSTIN") is a natural person residing in the State of Hawai'i and is the husband of Plaintiff ANNETTE AGUSTIN and father of Plaintiff JEFFREY KANE AGUSTIN.  Plaintiff GEORGE AGUSTIN was born and attended school in the Philippines, is not proficient in English language reading and writing, and is financially unsophisticated.

10.    Plaintiff JEFFREY KANE AGUSTIN (hereinafter "Plaintiff JEFFREY AGUSTIN") is a natural person residing in the State of Hawai'i and is the son of Plaintiff ANNETTE AGUSTIN and Plaintiff GEORGE AGUSTIN. Plaintiff JEFFREY AGUSTIN lives with his parents and is financially unsophisticated.

11.    Defendant PNC FINANCIAL SERVICES GROUP, INC., SUCCESSOR BY MERGER TO NATIONAL CITY BANK (hereinafter "Defendant PNC") is a corporation doing business in the State of Hawai'i, and is subject to the jurisdiction of this Court.  Defendant PNC is a citizen of a state other than the State of Hawai'i.

12.    Defendant PNC is the successor by merger to National City Bank.

13.    At all times relevant hereto, National City Bank was a national banking association doing business in the State of Hawai'i, was subject to the jurisdiction of this Court, and was a citizen of a state other than the State of

Hawai'i.

14.     Within three years prior to the filing of this action, NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK (hereinafter "NATIONAL CITY"), in the ordinary course of business, regularly extended credit to its consumer customers for which a finance charge was imposed.

15.     Defendant FIRST AMERICAN TITLE COMPANY, INC. (hereinafter "Defendant FIRST AMERICAN"), is a for profit corporation organized and existing under the laws of the State of Hawai'i, with its principal office in the City and County of Honolulu, State of Hawai'i.

16.     Defendant FIRST AMERICAN is now, and at all times relevant hereto was, licensed as an "escrow depository" pursuant to H.R.S. Chapter 449.

17.     Defendant RONALD P. KANAKANUI is a natural person residing in the State of Hawai'i and, at all times relevant hereto, did business in the State of Hawai'i under the trade name OHANA FINANCIAL GROUP (hereinafter "Defendant OHANA FINANCIAL") and was and is licensed as a "mortgage broker" pursuant to H.R.S. Chapter 454.

18.     Defendants JOHN DOES 1-10, JANE DOES 1-10, and DOE CORPORATIONS, PARTNERSHIPS AND OTHER ENTITIES 1-10 are persons and entities that may in some manner have a claim or some interest in the real property described in Paragraph 19 below and/or that may be participants in the

acts and practices and/or be liable to Plaintiffs for damages or other relief as set forth in this Complaint. Plaintiffs have reviewed all documents available to them and have made a diligent and good faith effort to ascertain said persons' and entities' full names and identities, and Plaintiffs have been unable to ascertain the identities of said Defendants. The names, capacities, and relationships of defendants named as Doe Defendants will be alleged by amendment to this Complaint when they are known.

## STATEMENT OF FACTS

19.    On February 12, 2007, Plaintiff ANNETTE AGUSTIN, Plaintiff GEORGE AGUSTIN, and Plaintiff JEFFREY AGUSTIN each had an ownership interest in the property located at 15-1493 23rd Avenue, Kea'au, Hawai'i 96749, also known as Tax Map Key No. (3) 1-5-038-088 (hereinafter "Subject Property").

20.    The Subject Property is now and for some time prior to February 12, 2007 was Plaintiffs' principal dwelling.

21.    In late 2006, Plaintiff ANNETTE AGUSTIN spoke with Defendant OHANA FINANCIAL about refinancing the Subject Property to obtain cash for home improvements.

22.    Plaintiff ANNETTE AGUSTIN wanted, requested and expected to obtain a single loan to get money for home improvements.

23.    Defendant OHANA FINANCIAL represented that it would arrange a

refinance loan with one monthly payment.

24.    Plaintiff ANNETTE AGUSTIN entered into the subject transaction in reliance on the above and other representations made by Defendants.

25.    Although Plaintiff ANNETTE AGUSTIN provided Defendant OHANA FINANCIAL with accurate financial information, Defendant OHANA FINANCIAL prepared a loan application that greatly overstated her income and falsely represented that her income was derived from self employment without her knowledge or consent.

26.    Defendant OHANA FINANCIAL and/or NATIONAL CITY selected Defendant FIRST AMERICAN to act as the escrow depository in the loan transaction(s) that is/are the subject of this action.

27.    On February 12, 2007, Plaintiff ANNETTE AGUSTIN went to the offices of Defendant FIRST AMERICAN in Hilo, Hawai'i to sign loan documents with the expectation that the transaction would involve one loan.

28.    Despite Plaintiff ANNETTE AGUSTIN's expectations and without explanation, NATIONAL CITY had prepared documents and made disclosures for the loan as if it were two separate transactions.

29.    The charges related to obtaining the loan sought by Plaintiff ANNETTE AGUSTIN were split between the two sets of documents.

30.    Prior to February 12, 2007, none of the Defendants had disclosed to

Plaintiff ANNETTE AGUSTIN that the loan she had discussed with Defendant OHANA FINANCIAL had been split into two separate loan transactions.

31.     Plaintiff ANNETTE AGUSTIN executed all of the loan documents presented to her by Defendant FIRST AMERICAN on February 12, 2007. Plaintiff GEORGE AGUSTIN and a representative of Defendant OHANA FINANCIAL were also present when Plaintiff ANNETTE AGUSTIN executed the loan documents.

32.     Plaintiff JEFFREY AGUSTIN was not present when Plaintiff ANNETTE AGUSTIN executed the loan documents.

33.     All of the contractual and disclosure documents Plaintiff ANNETTE AGUSTIN was instructed to sign were dated February 9, 2007.

34.     No explanation was given to Plaintiff ANNETTE AGUSTIN regarding the loan documents she was told to sign. Rather, she was shown where to sign each document and given no time to read what she was signing before the next document was presented to her for execution.

35.     Plaintiff ANNETTE AGUSTIN did not realize until some time after February 12, 2007 that the transaction had been broken into two loans.

36.     On February 12, 2007, Plaintiff ANNETTE AGUSTIN entered into a consumer credit transaction or transactions with NATIONAL CITY in which NATIONAL CITY extended consumer credit that was subject to a finance charge

and which was initially payable to NATIONAL CITY to refinance the Subject Property.

37.    Plaintiff ANNETTE AGUSTIN obtained the loan or loans primarily for personal, family or household purposes.

38.    In connection with the described loan transaction or transactions, NATIONAL CITY acquired one or more security interest in the Subject Property.

39.    The "Adjustable Rate Note" executed by Plaintiff ANNETTE AGUSTIN in connection with the larger of the two purported loans states that the loan was for $278,400.00 at an interest rate of 5.75% per annum for 60 months, with monthly principal and interest payments of $1,624.67 beginning April 1, 2007, after which the interest rate and payments would be adjusted every six months for the remainder of the 30-year loan term up to a maximum of 10.75% (hereinafter "First Loan").

40.    In connection with the First Loan, Plaintiff ANNETTE AGUSTIN was also instructed to execute an "Interest Only Payment Period Addendum to Adjustable Rate Note" providing for monthly payments of interest only in the amount of $1,334.00 for the first 60 months, followed by interest-only payments in adjusted amounts for another 60 months, after which fully amortizing principal and interest payments would be required for the remaining 240 months.

41.    Making the payments described in Paragraph 39 for 120 months

would reduce the principal balance to $231,405.94, thereby increasing Plaintiffs' home equity by $46,994.06.

42.     On February 12, 2007, in connection with the First Loan, Plaintiff ANNETTE AGUSTIN was given three identical copies of a written "Notice of Right to Cancel" (hereinafter "First Notice of Right to Cancel"). A true copy of the First Notice of Right to Cancel is attached as **Exhibit "A."**

43.     The only Plaintiff identified by name in the First Notice of Right to Cancel is Plaintiff ANNETTE AGUSTIN.

44.     The First Notice of Right to Cancel states that Plaintiff ANNETTE AGUSTIN had a legal right under federal law to cancel the transaction, without cost, within three business days from the last of three events: (1) the date of the transaction; (2) the date she received her TILA disclosures; or (3) the date she received the notice of her right to cancel.

45.     The First Notice of Right to Cancel states that the date of the transaction was "2/9/2007" and that a cancellation notice would have to be sent no later than midnight of "2/13/2007."

46.     The First Notice of Right to Cancel also instructed Plaintiff ANNETTE AGUSTIN to call NATIONAL CITY at a stated telephone number to notify NATIONAL CITY if she intended to cancel the First Loan.

47.     Plaintiff GEORGE AGUSTIN was not given a written "Notice of

Right to Cancel" to retain in connection with the First Loan transaction.

48.   Plaintiff JEFFREY AGUSTIN was not given a written "Notice of Right to Cancel" to retain in connection with the First Loan transaction.

49.   On February 12, 2007, in connection with the First Loan, Plaintiff ANNETTE AGUSTIN was given two identical copies of a written "Truth-in-Lending Disclosure Statement" containing the disclosures described in 12 C.F.R. § 226.18.

50.   Plaintiff GEORGE AGUSTIN was not given a written statement containing the disclosures described in 12 C.F.R. § 226.18 in connection with the First Loan transaction.

51.   Plaintiff JEFFREY AGUSTIN was not given a written statement containing the disclosures described in 12 C.F.R. § 226.18 in connection with the First Loan transaction.

52.   The "Fixed Rate Note and Security Agreement" executed by Plaintiff ANNETTE AGUSTIN in connection with the second purported loan states that the loan was for $52,200.00 at a fixed interest rate of 8.625% per annum and a term of 15 years, with monthly payments of $406.01 beginning April 1, 2007 (hereinafter "Second Loan").

53.   In fact, monthly payments of about $517.87 would be required to fully pay off a $52,200.00 loan with a fixed interest rate of 8.625% per annum in 15

years.

54.    In connection with the Second Loan, Plaintiff ANNETTE AGUSTIN
was also instructed to execute a "Balloon Note Addendum to Fixed Rate Note and
Security Agreement," stating that "[t]he final payment due on the Maturity Date of
the Note is larger than the previous monthly payments," and that "[t]he final
payment includes a substantial payment of principal." This document does not
state the amount of the final (balloon) payment that would be required on the
maturity date if all of the specified payments are made.

55.    In fact, after making the required monthly payments of $406.01 on the
Second Loan for 15 years, Plaintiff ANNETTE AGUSTIN would be required to
make a balloon payment equal to about 80% of the original amount borrowed.

56.    None of the Defendants disclosed to Plaintiff ANNETTE AGUSTIN
prior to February 12, 2007 that there would be a balloon payment.

57.    On February 12, 2007, in connection with the Second Loan, Plaintiff
ANNETTE AGUSTIN was given three identical copies of a written "Notice of
Right to Cancel" (hereinafter "Second Notice of Right to Cancel"). A true copy of
the Second Notice of Right to Cancel is attached as **Exhibit "B."**

58.    The only Plaintiff identified by name in the Second Notice of Right to
Cancel is Plaintiff ANNETTE AGUSTIN.

59.    The Second Notice of Right to Cancel states that Plaintiff ANNETTE

AGUSTIN had a legal right under federal law to cancel the transaction, without

cost, within three business days from the last of three events:  (1) the date of the

transaction; (2) the date she received her TILA disclosures; or (3) the date she

received the notice of her right to cancel.

60.    The Second Notice of Right to Cancel states that the date of the

transaction was "2/09/2007" and that a cancellation notice would have to be sent

no later than midnight of "2/13/2007."

61.    The Second Notice of Right to Cancel also instructed Plaintiff

ANNETTE AGUSTIN to call NATIONAL CITY at a stated telephone number to

notify NATIONAL CITY if she intended to cancel the Second Loan.

62.    Plaintiff GEORGE AGUSTIN was not given a written "Notice of

Right to Cancel" to retain in connection with the Second Loan transaction.

63.    Plaintiff JEFFREY AGUSTIN was not given a written "Notice of

Right to Cancel" to retain in connection with the Second Loan transaction.

64.    On February 12, 2007, in connection with the Second Loan, Plaintiff

ANNETTE AGUSTIN was given two identical copies of a written "Truth-in-

Lending Disclosure Statement" containing the disclosures described in 12 C.F.R. §

226.18.

65.    Plaintiff GEORGE AGUSTIN was not given a written statement

containing the disclosures described in 12 C.F.R. § 226.18 in connection with the

Second Loan transaction.

66.    Plaintiff JEFFREY AGUSTIN was not given a written statement containing the disclosures described in 12 C.F.R. § 226.18 in connection with the Second Loan transaction.

67.    None of the Plaintiffs was given a written statement containing the combined disclosures described in 12 C.F.R. § 226.18 for both the First Loan and Second Loan transactions.

68.    Defendant FIRST AMERICAN prepared one combined written settlement statement in connection with the First Loan and Second Loan (hereinafter "Final HUD-1").

69.    The Final HUD-1 states that NATIONAL CITY received a total of $7,820.27 in fees and charges relating to the First Loan and Second Loan.

70.    The Final HUD-1 states that Defendant OHANA FINANCIAL received $6,118.00 in fees relating to the First Loan and Second Loan.

71.    The Final HUD-1 states that other parties received a total of $3,377.36 in fees and charges relating to the First Loan and Second Loan, including $2,356.33 which was paid to Defendant FIRST AMERICAN.

72.    The Final HUD-1 states that Defendant FIRST AMERICAN disbursed $278,270.03 to Countrywide Home Loans to pay off a prior mortgage. In addition to a principal balance of $268,800.00, the payoff included a $7,257.60

prepayment penalty, a $90.00 "statement/forwarding" fee, and a $25.00 recording fee.

73.    Based on the above, the Final HUD-1 indicates that the total cost to Plaintiff ANNETTE AGUSTIN of obtaining the First Loan and Second Loan was $24,688.23.

74.    The Final HUD-1 states that a single cash disbursement of $35,014.34 was made to Plaintiff ANNETTE AGUSTIN in connection with the First Loan and Second Loan.

75.    Defendant FIRST AMERICAN knew or should have known that the subject loan transaction(s) involved an improper scheme to deprive Plaintiffs of their equity in the Subject Property and/or fraud.

76.    NATIONAL CITY was and is servicer of the First Loan.

77.    Some time after February 12, 2007, Bank of America became and is servicer of the Second Loan.

78.    On January 21, 2009, Plaintiff ANNETTE AGUSTIN mailed to NATIONAL CITY a letter stating she had not received certain loan documents and requesting that NATIONAL CITY provide copies of specified documents, a complete loan history, and the identity of the current owner and master servicer of the First Loan.  NATIONAL CITY received this letter on January 26, 2009.

79.    On or about February 4, 2009, NATIONAL CITY provided Plaintiff

ANNETTE AGUSTIN with some but not all of the loan-related documents and information requested in her January 21, 2009 letter.

80.    NATIONAL CITY provided no further response to Plaintiff ANNETTE AGUSTIN's January 21, 2009 letter.

81.    On May 5, 2009, through her attorney, Plaintiff ANNETTE AGUSTIN mailed to NATIONAL CITY a letter stating that it had not provided all of the documents and information requested in the January 21, 2009 letter and requesting that NATIONAL CITY provide the withheld information and documents as well as some additional described items.  NATIONAL CITY received this letter on May 11, 2009.

82.    On May 7, 2009, through her attorney, Plaintiff ANNETTE AGUSTIN mailed to NATIONAL CITY a letter requesting information relating to, and copies of, TILA-related documents given to Plaintiff GEORGE AGUSTIN. NATIONAL CITY received this letter on May 12, 2009.

83.    On or about May 19, 2009, NATIONAL CITY mailed to Plaintiff ANNETTE AGUSTIN a letter acknowledging receipt of the May 7, 2009 letter from her attorney.

84.    On or about May 19, 2009, in a separate mailing, NATIONAL CITY provided Plaintiff ANNETTE AGUSTIN with some but not all of the documents and information requested in the May 5, 2009 and May 7, 2009 letters.

85.    NATIONAL CITY provided no other response to Plaintiff ANNETTE AGUSTIN's May 5, 2009 or May 7, 2009 letters.

86.    On May 7, 2009, through their attorney, Plaintiffs sent a letter by certified mail to NATIONAL CITY rescinding the First Loan pursuant to TILA, which was delivered to NATIONAL CITY on May 12, 2009.  A true copy of this letter is attached hereto as **Exhibit "C."**

87.    On May 7, 2009, through their attorney, Plaintiffs sent a separate letter by certified mail to NATIONAL CITY rescinding the Second Loan pursuant to TILA, which was delivered to NATIONAL CITY on May 12, 2009.  A true copy of this letter is attached hereto as **Exhibit "D."**

88.    On July 7, 2009, through their attorney, Plaintiffs sent a letter by certified mail to Bank of America stating that they had rescinded the Second Loan pursuant to TILA, which was delivered to Bank of America on July 10, 2009.  A true copy of this letter is attached hereto as **Exhibit "E."**

89.    Plaintiffs hereby again rescind each and every transaction any or all of them have or had with any Defendant and/or any predecessor, successor or assignee of a Defendant.

90.    None of the Defendants has returned to Plaintiffs any money paid in connection with the subject loan transaction(s) or taken any action to terminate the security interest(s) relating to the loan(s).

91.     On information and belief, the $330,600.00 combined principal in the First Loan and Second Loan transactions exceeded the market value of the Subject Property in February 2007.

92.     The combined monthly payments required by the First Loan and Second Loan agreements substantially exceeded Plaintiff ANNETTE AGUSTIN's gross monthly income in February 2007.

93.     The acts of Defendants alleged in this Complaint were performed by their agents, officers, and/or employees within the scope of their actual or apparent authority.

## COUNT I

### (Truth in Lending Act Violations:  Combined Loan Rescission and Recoupment)

94.     Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

95.     At all relevant times, NATIONAL CITY was a "creditor" required to comply with TILA and Regulation Z.

96.     On or about February 12, 2007, Plaintiff ANNETTE AGUSTIN and NATIONAL CITY entered into a consumer credit transaction in which she borrowed $330,600.00 within the meaning of TILA, pursuant to 15 U.S.C. § 1602 and 12 C.F.R. § 226.2.

97.     As part of the described transaction, NATIONAL CITY retained or

19

acquired a security interest in the Subject Property, which was and is Plaintiffs' principal dwelling.

98.    Each Plaintiff had the right to rescind the transaction until midnight of the third business day following consummation, delivery of the required rescission notice, or delivery of all "material disclosures," whichever occurred last, pursuant to 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(3).

99.    NATIONAL CITY failed to deliver to each Plaintiff two copies of a notice of the right to rescind as required by 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b).

100.    Pursuant to 12 C.F.R. § 226.17(a), TILA loan disclosures must be made clearly and conspicuously and grouped together.

101.    Notwithstanding the unity of the underlying transaction, NATIONAL CITY gave TILA disclosures as if it were two separate loan transactions.

102.    Separating the charges for a single loan transaction into two separate disclosure statements is a violation of TILA's requirement of a single, comprehensible disclosure of the cost of credit.

103.    By splitting the loan disclosures on two separate statements, NATIONAL CITY failed to deliver to each Plaintiff all "material" disclosures as described in 12 C.F.R. § 226.23(a)(3) n. 48.

104.    Pursuant to 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a), the

violation(s) alleged in Paragraph 99 and/or Paragraph 103 extended for up to three years after consummation each Plaintiff's right under TILA to rescind the described transaction.

105.   Each Plaintiff has exercised her or his right to rescind the transaction pursuant to TILA.

106.   Pursuant to 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(1) and (2), when a consumer rescinds a transaction under TILA, the security interest giving rise to the right of rescission becomes void and the consumer is not liable for any amount, including any finance charge, and within 20 days the creditor is required to return any money or property that has been given to anyone in connection with the transaction and must take any action necessary to reflect the termination of the security interest.  Therefore, any security interest NATIONAL CITY and/or any successor or assignee may have held in the Subject Property in connection with the transaction is void.

107.   For the above-stated reasons, Plaintiffs are entitled to enforcement of their rescission of the transaction.

108.   Pursuant to 15 U.S.C. § 1640(a), Plaintiffs are also entitled to recover reasonable attorneys' fees and the costs of the action.

109.   Pursuant to 15 U.S.C. § 1640(a) and (e), Plaintiffs are also entitled to assert the TILA disclosure violation(s) described in Paragraph 99 and/or Paragraph

103 as a recoupment in the amount of $2,000.00, and are entitled to a credit in that amount with regard to their tender obligation, if any, under TILA.

## COUNT II

### (Truth in Lending Act Violations: Combined Loan Damages – Defendant PNC)

110.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

111.   NATIONAL CITY's above-stated failure to allow rescission and to return to Plaintiffs the money paid in connection with the transaction and to take action necessary to reflect the termination of the security interest violated 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(2).

112.   Pursuant to 15 U.S.C. §§ 1635(g) and 1640, by reason of the TILA violation(s) described in Paragraph 111, Defendant PNC is liable to Plaintiffs for any actual damage sustained by Plaintiffs; twice the amount of any finance charge in connection with the transaction, but not less than $200.00 or greater than $2,000.00; and costs of the action and a reasonable attorney's fee.

## COUNT III

### (Truth in Lending Act Violations: First Loan Rescission and Recoupment)

113.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

114.   On or about February 12, 2007, Plaintiff ANNETTE AGUSTIN and NATIONAL CITY entered into a consumer credit transaction (the First Loan) within the meaning of TILA, pursuant to 15 U.S.C. § 1602 and 12 C.F.R. § 226.2.

115.   As part of the First Loan transaction, NATIONAL CITY retained or acquired a security interest in the Subject Property, which was and is Plaintiffs' principal dwelling.

116.   Each Plaintiff had the right to rescind the First Loan transaction until midnight of the third business day following consummation, delivery of the required rescission notice, or delivery of all "material disclosures," whichever occurred last, pursuant to 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(3).

117.   NATIONAL CITY failed to deliver to each Plaintiff two copies of a notice of the right to rescind as required by 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b).

118.   NATIONAL CITY failed to deliver to each Plaintiff all "material" disclosures as described in 12 C.F.R. § 226.23(a)(3) n. 48.

119.   Pursuant to 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a), the violation(s) alleged in Paragraph 117 and/or Paragraph 118 extended for up to three years after consummation each Plaintiff's right under TILA to rescind the First Loan transaction.

120.   Each Plaintiff has exercised her or his right to rescind the First Loan

transaction pursuant to TILA.

121.   Pursuant to 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(1) and (2), any security interest NATIONAL CITY and/or any successor or assignee may have held in the Subject Property in connection with the First Loan is void.

122.   For the above-stated reasons, Plaintiffs are entitled to enforcement of their rescission of the First Loan transaction.

123.   Pursuant to 15 U.S.C. § 1640(a), Plaintiffs are also entitled to recover reasonable attorneys' fees and the costs of the action.

124.   Pursuant to 15 U.S.C. § 1640(a) and (e), Plaintiffs are also entitled to assert the TILA disclosure violation(s) described in Paragraph 117 and/or Paragraph 118 as a recoupment in the amount of $2,000.00, and are entitled to a credit in that amount with regard to their tender obligation, if any, under TILA.

## COUNT IV

### (Truth in Lending Act Violations:  First Loan Damages – Defendant PNC)

125.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

126.   NATIONAL CITY's above-stated failure to allow rescission and to return to Plaintiffs the money paid in connection with the First Loan transaction and to take action necessary to reflect the termination of the security interest violated 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(2).

127.   Pursuant to 15 U.S.C. §§ 1635(g) and 1640, by reason of the TILA violation(s) described in Paragraph 126, Defendant PNC is liable to Plaintiffs for any actual damage sustained by Plaintiffs; twice the amount of any finance charge in connection with the First Loan transaction, but not less than $200.00 or greater than $2,000.00; and costs of the action and a reasonable attorney's fee.

## COUNT V

### (Truth in Lending Act Violations:  Second Loan Rescission and Recoupment)

128.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

129.   On or about February 12, 2007, Plaintiff ANNETTE AGUSTIN and NATIONAL CITY entered into a second consumer credit transaction (the Second Loan) within the meaning of TILA, pursuant to 15 U.S.C. § 1602 and 12 C.F.R. § 226.2.

130.   As part of the Second Loan transaction, NATIONAL CITY retained or acquired a security interest in the Subject Property, which was and is Plaintiffs' principal dwelling.

131.   Each Plaintiff had the right to rescind the Second Loan transaction until midnight of the third business day following consummation, delivery of the required rescission notice, or delivery of all "material disclosures," whichever occurred last, pursuant to 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(3).

132.   NATIONAL CITY failed to deliver to each Plaintiff two copies of a notice of the right to rescind as required by 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b).

133.   NATIONAL CITY failed to deliver to each Plaintiff all "material" disclosures described in 12 C.F.R. § 226.23(a)(3) n. 48.

134.   Pursuant to 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a), the violation(s) alleged in Paragraph 132 and/or Paragraph 133 extended for up to three years after consummation each Plaintiff's right under TILA to rescind the Second Loan transaction.

135.   Each Plaintiff has exercised her or his right to rescind the Second Loan transaction pursuant to TILA.

136.   Pursuant to 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(1) and (2), any security interest NATIONAL CITY and/or any successor or assignee may have held in the Subject Property in connection with the Second Loan is void.

137.   For the above-stated reasons, Plaintiffs are entitled to enforcement of their rescission of the Second Loan transaction.

138.   Pursuant to 15 U.S.C. § 1640(a), Plaintiffs are also entitled to recover reasonable attorneys' fees and the costs of the action.

139.   Pursuant to 15 U.S.C. § 1640(a) and (e), Plaintiffs are also entitled to assert the TILA disclosure violation(s) described in Paragraph 132 and/or

Paragraph 133 as a recoupment in the amount of $2,000.00, and are entitled to a credit in that amount with regard to their tender obligation, if any, under TILA.

## COUNT VI

**(Truth in Lending Act Violations:  Second Loan
Damages – Defendant PNC)**

140.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

141.   NATIONAL CITY's above-stated failure to allow rescission and to return to Plaintiffs the money paid in connection with the Second Loan transaction and to take action necessary to reflect the termination of the security interest violated 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(2).

142.   Pursuant to 15 U.S.C. §§ 1635(g) and 1640, by reason of the TILA violation(s) described in Paragraph 141, Defendant PNC is liable to Plaintiffs for any actual damage sustained by Plaintiffs; twice the amount of any finance charge in connection with the Second Loan transaction, but not less than $200.00 or greater than $2,000.00; and costs of the action and a reasonable attorney's fee.

## COUNT VII

**(Credit Repair Organizations Act Violations
Defendant OHANA FINANCIAL)**

143.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

144.   On or about February 12, 2007, Plaintiff ANNETTE AGUSTIN and

NATIONAL CITY entered into a "consumer credit transaction" within the

meaning of CROA, pursuant to 15 U.S.C. § 1679a(2).

145.   CROA prohibits any person from making any statement, or

counseling or advising any consumer to make any statement, which is untrue or

misleading (or which, upon the exercise of reasonable care, should be known by

the credit repair organization, officer, employee, agent, or other person to be untrue

or misleading) with respect to any consumer's credit worthiness, credit standing, or

credit capacity to any person, inter alia, to whom the consumer has applied or is

applying for an extension of credit, pursuant to 15 U.S.C. § 1679b(a)(1).

146.   In the course of the subject loan transaction(s), Defendant OHANA

FINANCIAL made statements, or counseled or advised Plaintiff ANNETTE

AGUSTIN to make statements, which were untrue or misleading or which, upon

the exercise of reasonable care, should have been known by Defendant OHANA

FINANCIAL to be untrue or misleading, to NATIONAL CITY with respect to

Plaintiff ANNETTE AGUSTIN's credit worthiness, credit standing, or credit

capacity, in violation of 15 U.S.C. § 1679b(a)(1).

147.   Pursuant to 15 U.S.C. § 1679g(a), by reason of the CROA violation

described in Paragraph 146, Defendant OHANA FINANCIAL is liable to Plaintiff

ANNETTE AGUSTIN for any actual damage she sustained as a result of the

violation, punitive damages, and the costs of the action, together with reasonable attorneys' fees.

## COUNT VIII

### (Real Estate Settlement Procedures Act Violations Defendant PNC)

148.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

149    At all relevant times in connection with the First Loan, NATIONAL CITY was and is a loan "servicer," as that term is defined in 12 U.S.C. § 2605(i)(2), required to comply with RESPA.

150.   Pursuant to 12 U.S.C. § 2605(e)(1)(B), the January 21, 2009 letter that Plaintiff ANNETTE AGUSTIN mailed to NATIONAL CITY constitutes a "qualified written request" (hereinafter "QWR").

151.   NATIONAL CITY failed to take required action with respect to Plaintiff ANNETTE AGUSTIN's January 21, 2009 QWR within 60 days, as required by 12 U.S.C. § 2605(e)(2).

152.   Pursuant to 12 U.S.C. § 2605(e)(1)(B), the May 5, 2009 letter that Plaintiffs' attorney mailed to NATIONAL CITY constitutes a QWR.

153.   NATIONAL CITY failed to provide a written response acknowledging receipt of Plaintiff ANNETTE AGUSTIN's May 5, 2009 QWR within 20 days, as required by 12 U.S.C. § 2605(e)(1)(A).

154.   NATIONAL CITY failed to take required action with respect to Plaintiff ANNETTE AGUSTIN's May 5, 2009 QWR within 60 days, as required by 12 U.S.C. § 2605(e)(2).

155.   Pursuant to 12 U.S.C. § 2605(e)(1)(B), the May 7, 2009 letter that Plaintiffs' attorney mailed to NATIONAL CITY constitutes a QWR.

156.   NATIONAL CITY failed to take required action with respect to Plaintiff ANNETTE AGUSTIN's May 7, 2009 QWR within 60 days, as required by 12 U.S.C. § 2605(e)(2).

157.   Pursuant to 12 U.S.C. § 2605(f), a servicer that violates § 2605 is liable to the borrower for each violation in an amount equal to the sum of any actual damages to the borrower as a result of the failure, any additional damages the Court may allow in the case of a pattern or practice of noncompliance in an amount not to exceed $1,000.00, and the costs of the action together with reasonable attorneys' fees.

## COUNT IX

### (Unfair or Deceptive Acts or Practices
### Defendant PNC)

158.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

159.   Each Plaintiff is a "consumer" as that term is defined in H.R.S. § 480-1.

160.   The described acts and practices involved "trade or commerce" as that term is used in H.R.S. § 480-2(a).

161.   An unfair or deceptive act or practice (hereinafter "UDAP") in the conduct of any trade or commerce is unlawful, pursuant to H.R.S. § 480-2(a). Certain deceptive trade practices are also unlawful pursuant to H.R.S. § 481A-3.

162.   In connection with the subject loan(s), NATIONAL CITY engaged in UDAPs that violate H.R.S. §§ 480-2(a) and/or 481A-3, including but not limited to:

(1)   Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.

(2)   Failing to adequately disclose the true costs and risks of the subject loan(s) and its/their inappropriateness for Plaintiff ANNETTE AGUSTIN.

(3)   Making a refinance loan or loans that resulted in little net economic benefit to Plaintiffs with the primary objective of generating fees.

(4)   Splitting the loan into two separate transactions as a means to make a high loan-to-value mortgage loan and to collect additional fees and interest.

(5)   Using a balloon payment to conceal the true cost and burden of the refinancing.

(6)   Making the subject loan(s) based on the value of the collateral, without regard to Plaintiff ANNETTE AGUSTIN's ability to repay the loan(s).

(7)     Failing to disclose that the loan would be split into two loans.

(8)     Failing to separately disclose the fees and charges imposed in connection with the First Loan.

(9)     Making inconsistent representations regarding the monthly payment amount in the First Loan.

(10)   Failing to separately disclose the fees and charges imposed in connection with the Second Loan.

(11)   Falsely representing that making the disclosed payments in the Second Loan would fully pay it off in 15 years.

(12)   Falsely representing that Plaintiff ANNETTE AGUSTIN would be required to pay a $200.00 "administration fee" in connection with the Second Loan.

(13)   Attempting to deprive Plaintiffs of their legal right to cancel the subject loan(s).

163.   NATIONAL CITY's violations of TILA in connection with the subject loan(s) constitute UDAPs in violation of H.R.S. §§ 480-2(a) and/or 481A-3.

164.   The conduct described in Paragraph 162 and/or Paragraph 163 caused Plaintiffs to suffer injury to their property, including without limitation wrongfully induced payment of money.

165.   NATIONAL CITY's described acts and practices offend established public policy and/or were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and were therefore unfair in violation of H.R.S. § 480-2(a).

166.   NATIONAL CITY's described acts and practices involved material representations, omissions or practices that were likely to mislead consumers acting reasonably under the circumstances, and were therefore deceptive in violation of H.R.S. §§ 480-2(a) and/or 481A-3.

167.   Pursuant to H.R.S. § 480-12, a contract or agreement in violation of H.R.S. Chapter 480 is void and is not enforceable at law or in equity.

168.   Pursuant to H.R.S. § 480-13(b)(1), a consumer who is injured by a UDAP is entitled, for each UDAP, to be awarded a sum not less than $1,000.00 or threefold any damages he or she sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit.

169.   Pursuant to H.R.S. § 480-13(b)(2), a consumer who is injured by a UDAP may bring proceedings to enjoin the unlawful practices and be awarded reasonable attorneys' fees together with the costs of suit.

## COUNT X

### (Unfair or Deceptive Acts or Practices
### Defendant OHANA FINANCIAL)

170.   Plaintiffs reallege, as if fully set forth herein, each and every

allegation in the preceding Paragraphs of this Complaint.

171.   In connection with the subject loan(s), Defendant OHANA FINANCIAL engaged in UDAPs that violate H.R.S. §§ 480-2(a) and/or 481A-3, including but not limited to:

(1)   Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.

(2)   Falsely representing and/or failing to adequately disclose the true costs and risks of the subject loan(s) and its/their inappropriateness for Plaintiff ANNETTE AGUSTIN.

(3)   Arranging a refinancing that resulted in little net economic benefit to Plaintiffs with the primary objective of generating fees.

(4)   Splitting the loan into two separate transactions as a means to make a high loan-to-value mortgage loan and to collect additional fees and charges.

(5)   Using a balloon payment to conceal the true cost and burden of the refinancing.

(6)   Arranging the subject loan(s) based on the value of the collateral, without regard to Plaintiff ANNETTE AGUSTIN's ability to repay the loan(s).

(7)   Falsifying the amount of Plaintiff ANNETTE AGUSTIN's

income and source of income on the loan application it prepared.

(8)    Failing to disclose that NATIONAL CITY approved the subject loan(s) based on Defendant OHANA FINANCIAL's misrepresentations regarding Plaintiff ANNETTE AGUSTIN's ability to repay the loan.

(9)    Falsely representing the amount Plaintiff ANNETTE AGUSTIN was required to pay.

(10)   Failing to separately disclose the fees and charges imposed in connection with the First Loan.

(11)   Failing to separately disclose the fees and charges imposed in connection with the Second Loan.

(12)   Falsely representing that there would be only one loan.

(13)   Failing to disclose that the loan would be split into two loans.

(14)   Failing to disclose that the Second Loan would have a balloon payment.

(15)   Falsely representing the nature of the documents Plaintiff ANNETTE AGUSTIN was told to sign in connection with the subject loan(s).

(16)   Failing to disclose that paying off the existing mortgage loan would require payment of a prepayment penalty of more than $7,000.00.

172.   The conduct described in Paragraph 171 caused Plaintiffs to suffer injury to their property, including without limitation wrongfully induced payment

of money.

173.   Defendant OHANA FINANCIAL's described acts and practices offend established public policy and/or were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and were therefore unfair in violation of H.R.S. § 480-2(a).

174.   Defendant OHANA FINANCIAL's described acts and practices involved material representations, omissions or practices that were likely to mislead consumers acting reasonably under the circumstances, and were therefore deceptive in violation of H.R.S. §§ 480-2(a) and/or 481A-3.

175.   Pursuant to H.R.S. § 480-12, the subject loan(s) is/are void and not enforceable at law or in equity.

176.   Pursuant to H.R.S. § 480-13(b)(1), Plaintiffs are entitled, for each UDAP, to be awarded a sum not less than $1,000.00 or threefold any damages they sustained, whichever sum is the greater, plus reasonable attorney's fees and the costs of suit.

177.   Pursuant to H.R.S. § 480-13(b)(2), Plaintiffs are entitled to enjoin Defendant OHANA FINANCIAL's unlawful practices and be awarded reasonable attorneys' fees and the costs of suit.

## COUNT XI

### (Unfair or Deceptive Acts or Practices Defendant FIRST AMERICAN)

178.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

179.   In connection with the subject loan(s), Defendant FIRST AMERICAN engaged in UDAPs that violate H.R.S. §§ 480-2(a) and/or 481A-3, including but not limited to:

(1)   Failing to separately disclose the fees and charges imposed in connection with the First Loan.

(2)   Failing to separately disclose the fees and charges imposed in connection with the Second Loan.

(3)   Disbursing funds belonging to Plaintiff ANNETTE AGUSTIN when it knew or should have known that the subject loan transaction(s) involved an improper scheme to deprive Plaintiffs of money and/or fraud.

(4)   Falsely representing that Plaintiff ANNETTE AGUSTIN would be required to pay a $200.00 "administration fee" in connection with the Second Loan.

(5)   Collecting a previously undisclosed and improper charge of $95.

(6)   Falsely representing to Plaintiff ANNETTE AGUSTIN that it was acting in her interest.

180.   The conduct described in Paragraph 179 caused Plaintiffs to suffer

injury to their property, including without limitation wrongfully induced payment of money.

181.   Defendant FIRST AMERICAN's described acts and practices offend established public policy and/or were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and were therefore unfair in violation of H.R.S. § 480-2(a).

182.   Defendant FIRST AMERICAN's described acts and practices involved material representations, omissions or practices that were likely to mislead consumers acting reasonably under the circumstances, and were therefore deceptive in violation of H.R.S. §§ 480-2(a) and/or 481A-3.

183.   Pursuant to H.R.S. § 480-12, the subject loan(s) is/are void and not enforceable at law or in equity.

184.   Pursuant to H.R.S. § 480-13(b)(1), Plaintiffs are entitled, for each UDAP, to be awarded a sum not less than $1,000 or threefold any damages they sustained, whichever sum is the greater, plus reasonable attorney's fees and the costs of suit.

185.   Pursuant to H.R.S. § 480-13(b)(2), Plaintiffs are entitled to enjoin Defendant OHANA FINANCIAL's unlawful practices and be awarded reasonable attorneys' fees and the costs of suit.

## COUNT XII

### (Fraud – Defendant OHANA FINANCIAL)

186.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

187.   Defendant OHANA FINANCIAL falsely represented the true costs and risks of the subject loan(s) and its/their inappropriateness for Plaintiff ANNETTE AGUSTIN.

188.   Defendant OHANA FINANCIAL falsely represented the amount of Plaintiff ANNETTE AGUSTIN's income and source of income on the loan application it prepared.

189.   Defendant OHANA FINANCIAL falsely represented the amount Plaintiff ANNETTE AGUSTIN was required to pay.

190.   Defendant OHANA FINANCIAL falsely represented that there would be only one loan.

191.   Defendant OHANA FINANCIAL falsely represented the nature of the documents Plaintiff ANNETTE AGUSTIN was told to sign in connection with the subject loan(s).

192.   Defendant OHANA FINANCIAL made the false representations described in this Complaint and others with knowledge of their falsity or without knowledge of their truth or falsity.

193.   Defendant OHANA FINANCIAL made the false representations in contemplation of Plaintiffs' reliance upon them.

194.   Plaintiffs relied upon those false representations and suffered damage as a result of their reliance upon them.

195.   Defendant OHANA FINANCIAL acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or its actions constituted willful misconduct or that entire want of care which raises the presumption of a conscious indifference to consequences to Plaintiffs.

196.   Plaintiffs are entitled to judgment against Defendant OHANA FINANCIAL for actual and punitive damages in an amount to be determined at trial.

## COUNT XIII

### (Civil Conspiracy)

197.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

198.   NATIONAL CITY, Defendant OHANA FINANCIAL and Defendant FIRST AMERICAN entered into an agreement to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means, in connection with the subject loan transaction(s).

199.   As more fully set forth in Count XII above, Plaintiffs' Complaint sets forth actionable claims based on fraud, which was accomplished through the above-described agreement.

200.   NATIONAL CITY, Defendant OHANA FINANCIAL and Defendant FIRST AMERICAN engaged in overt acts pursuant to and in furtherance of the described agreement, including but not limited to making the false representations set forth in Count XII above.

201.   Plaintiffs have suffered injury as the proximate result of the unlawful overt acts performed by said Defendants.

## COUNT XIV

### (Aiding and Abetting)

202.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

203.   As more fully set forth above, NATIONAL CITY, Defendant OHANA FINANCIAL and Defendant FIRST AMERICAN engaged in wrongful acts which caused injury to Plaintiffs.

204.   NATIONAL CITY, Defendant OHANA FINANCIAL and/or Defendant FIRST AMERICAN aided the Defendant(s) that engaged in those wrongful acts.

205.   Said Defendant(s) knowingly gave substantial assistance to the

Defendant(s) that engaged in the wrongful conduct.

206.   At the time of providing the assistance, NATIONAL CITY,

Defendant OHANA FINANCIAL and/or Defendant FIRST AMERICAN

was/were generally aware of its/their role as part of an overall tortious activity.

## COUNT XV

### (Negligence – Defendant FIRST AMERICAN)

207.   Plaintiffs reallege, as if fully set forth herein, each and every

allegation in the preceding Paragraphs of this Complaint.

208.   Defendant FIRST AMERICAN had a duty to protect the parties to an

escrow transaction in which it acted as an escrow depository against unreasonable

risks relating to money and other consideration and instruments affecting title to

real property that it held in connection with the transaction.

209.   Defendant FIRST AMERICAN breached this duty by participating in

a scheme that deprived Plaintiffs of money they would otherwise have received

and/or caused them to suffer other injury in connection with the subject loan

transaction(s).

210.   There was a reasonably close causal connection between Defendant

FIRST AMERICAN's conduct and the resulting injury to Plaintiffs.

211.   Plaintiffs suffered actual damage as a result of Defendant FIRST

AMERICAN's conduct.

212.   Defendant FIRST AMERICAN acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or its actions constituted willful misconduct or that entire want of care which raises the presumption of a conscious indifference of the consequences to Plaintiffs.

## COUNT XVI

### (Negligent Misrepresentation – Defendant FIRST AMERICAN)

213.   Plaintiffs reallege, as if fully set forth herein, each and every allegation in the preceding Paragraphs of this Complaint.

214.   In the course of its business, Defendant FIRST AMERICAN supplied false information to Plaintiff ANNETTE AGUSTIN regarding the amount of money she was to receive in the subject loan transaction(s).

215.   Defendant FIRST AMERICAN supplied false information as a result of its failure to exercise reasonable care or competence in obtaining or communicating the information.

216.   Plaintiff ANNETTE AGUSTIN relied upon the false information Defendant FIRST AMERICAN supplied and suffered a resulting pecuniary loss.

## COUNT XVII

### (Breach of Fiduciary Duty – Defendant FIRST AMERICAN)

217.   Plaintiffs reallege, as if fully set forth herein, each and every

allegation in the preceding Paragraphs of this Complaint.

218.   Defendant FIRST AMERICAN is an escrow depository subject to H.R.S. Chapter 449.

219.   Pursuant to H.R.S. § 449-16, a licensed escrow depository has a statutorily imposed responsibility to act as a trustee for all moneys, other consideration, and instruments that it receives.

220.   Under H.R.S. § 449-16, an escrow depository owes a fiduciary duty to the parties to the escrow transaction.

221.   In the subject loan transaction(s), Defendant FIRST AMERICAN acted as a fiduciary party holding funds in an escrow that were to be disbursed to Plaintiff ANNETTE AGUSTIN.

222.   Defendant FIRST AMERICAN owed a fiduciary duty to Plaintiff ANNETTE AGUSTIN as a party to the escrow transaction that is the subject of this action.

223.   Defendant FIRST AMERICAN breached its fiduciary duty to Plaintiff ANNETTE AGUSTIN by, among other things, disbursing to another party or parties $95.00 or more that would otherwise have been paid to Plaintiff ANNETTE AGUSTIN and by failing to provide an accurate and fully informative settlement statement.

224.    Plaintiff ANNETTE AGUSTIN suffered actual damages as a result of Defendant FIRST AMERICAN's conduct.

WHEREFORE, Plaintiffs respectfully request that the Court:

1.    Grant such injunctive and ancillary relief as may be necessary to avert the likelihood of injury to Plaintiffs during the pendency of this action and to preserve the possibility of effective final relief.

2.    For Count I:  (1) declare that Plaintiffs have rescinded the combined loan transaction pursuant to TILA, that the loan agreement(s) is/are void and unenforceable, that any security interest(s) created in the transaction is/are void, and that Plaintiffs have no further obligation of payment in connection with the combined loan transaction; (2) order the return to Plaintiffs of any money or property given by Plaintiffs to anyone, including but not limited to Defendants, in connection with the combined loan transaction; (3) order Defendant PNC to take all actions necessary to reflect the termination of any security interest(s) in the Subject Property created in the combined loan transaction, including but not limited to causing satisfaction documents to be filed and recorded with the State of Hawai'i Bureau of Conveyances regarding the security instruments executed in connection with the purported First Loan and Second Loan; (4) enjoin Defendant PNC during the pendency of this action, and permanently thereafter, from recording any deed or mortgage regarding the Subject Property or from otherwise

taking any action to deprive Plaintiffs of ownership or possession of the Subject Property; and (5) declare that Plaintiffs are entitled to an offset for all money given to anyone in connection with the combined loan transaction as well as a recoupment in the amount of $4,000.00.

3.      For Count II:  (1) award Plaintiffs their actual damages as will be proved at trial; and (2) award Plaintiffs statutory damages of $4,000.00.

4.      For Count III:  (1) declare that Plaintiffs have rescinded the First Loan transaction pursuant to TILA, that the loan agreement is void and unenforceable, that any security interest created in the First Loan transaction is void, and that Plaintiffs have no further obligation of payment in connection with the First Loan; (2) order the return to Plaintiffs of any money or property given by Plaintiffs to anyone, including but not limited to Defendants, in connection with the First Loan; (3) order Defendant PNC to take all actions necessary to reflect the termination of any security interest in the Subject Property created in the First Loan transaction, including but not limited to causing a satisfaction document to be filed and recorded with the State of Hawai'i Bureau of Conveyances regarding the security instrument executed in connection with the First Loan; (4) enjoin Defendant PNC during the pendency of this action, and permanently thereafter, from recording any deed or mortgage regarding the Subject Property or from otherwise taking any action to deprive Plaintiffs of ownership or possession of the Subject Property; and

(5) declare that Plaintiffs are entitled to an offset for all money given to anyone in connection with the First Loan as well as a recoupment in the amount of $2,000.00.

5.     For Count IV:  (1) award Plaintiffs their actual damages as will be proved at trial; and (2) award Plaintiffs statutory damages of $2,000.00.

6.     For Count V:  (1) declare that Plaintiffs have rescinded the Second Loan transaction pursuant to TILA, that the loan agreement is void and unenforceable, that any security interest created in the Second Loan transaction is void, and that Plaintiffs have no further obligation of payment in connection with the Second Loan; (2) order the return to Plaintiffs of any money or property given by Plaintiffs to anyone, including but not limited to Defendants, in connection with the Second Loan; (3) order Defendant PNC to take all actions necessary to reflect the termination of any security interest in the Subject Property created in the Second Loan transaction, including but not limited to causing a satisfaction document to be filed and recorded with the State of Hawai'i Bureau of Conveyances regarding the security interest executed in connection with the Second Loan; (4) enjoin Defendant PNC during the pendency of this action, and permanently thereafter, from recording any deed or mortgage regarding the Subject Property or from otherwise taking any action to deprive Plaintiffs of ownership or possession of the Subject Property; and (5) declare that Plaintiffs are entitled to an offset for all money given to anyone in connection with the Second Loan as well as

a recoupment in the amount of $2,000.00.

7.     For Count VI:  (1) award Plaintiffs their actual damages as will be proved at trial; and (2) award Plaintiffs statutory damages of $2,000.00.

8.     For Count VII:  (1) award Plaintiff ANNETTE AGUSTIN her actual damages sustained as a result of Defendant OHANA FINANCIAL's CROA violation(s); and (2) award Plaintiff ANNETTE AGUSTIN punitive damages.

9.     For Count VIII:  (1) award Plaintiff ANNETTE AGUSTIN her actual damages as will be proved at trial; and (2) award Plaintiff ANNETTE AGUSTIN additional damages in the amount of $1,000.00.

10.     For Count IX:  (1) declare that each contract or agreement relating to the subject loan transaction(s) is void and not enforceable at law or in equity pursuant to H.R.S. § 480-12 and order the relief described in Paragraph 4(2)-(4) and Paragraph 6(2)-(4) above; (2) for each UDAP engaged in by Defendant PNC, award Plaintiffs statutory damages of not less than $1,000.00 or three times the damages Plaintiffs sustained, whichever is greater; and (3) enjoin Defendant PNC from engaging in acts or practices that violate H.R.S. §§ 480-2 and/or 481A-3.

11.     For Count X:  (1) declare that each contract or agreement relating to the subject loan transaction(s) is void and not enforceable at law or in equity pursuant to H.R.S. § 480-12 and order the relief described in Paragraph 4(2)-(4) and Paragraph 6(2)-(4) above; (2) for each UDAP engaged in by Defendant

OHANA FINANCIAL, award Plaintiffs statutory damages of not less than $1,000.00 or three times the damages Plaintiffs sustained, whichever is greater; and (3) enjoin Defendant OHANA FINANCIAL from engaging in acts or practices that violate H.R.S. §§ 480-2 and/or 481A-3.

12.     For Count XI:  (1) declare that each contract or agreement relating to the subject loan transaction(s) is void and not enforceable at law or in equity pursuant to H.R.S. § 480-12 and order the relief described in Paragraph 4(2)-(4) and Paragraph 6(2)-(4) above; (2) for each UDAP engaged in by Defendant FIRST AMERICAN, award Plaintiffs statutory damages of not less than $1,000.00 or three times the damages Plaintiffs sustained, whichever is greater; and (3) enjoin Defendant FIRST AMERICAN from engaging in acts or practices that violate H.R.S. §§ 480-2 and/or 481A-3.

13.     For Count XII:  (1) declare that the subject loan transaction(s) is/are void and order the relief described in Paragraph 4(2)-(4) and Paragraph 6(2)-(4) above; and (2) award Plaintiffs actual and punitive damages in an amount to be determined at trial.

14.     For Count XIII:  (1) declare that the subject loan transaction(s) is/are void and order the relief described in Paragraph 4(2)-(4) and Paragraph 6(2)-(4) above; and (2) award Plaintiffs actual and punitive damages in an amount to be determined at trial.

15.   For Count XIV: (1) declare that the subject loan transaction(s) is/are void and order the relief described in Paragraph 4(2)-(4) and Paragraph 6(2)-(4) above; and (2) award Plaintiffs actual and punitive damages in an amount to be determined at trial.

16.   For Count XV, award Plaintiffs compensatory and punitive damages in an amount to be determined at trial.

17.   For Count XVI, award Plaintiff ANNETTE AGUSTIN damages in an amount to be determined at trial.

18.   For Count XVII, award Plaintiff ANNETTE AGUSTIN damages in an amount to be determined at trial.

19.   Award Plaintiffs reasonable attorneys' fees and the costs of the action.

20.   Grant such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

DATED:    Honoka'a, Hawai'i, September 8__, 2009.

GEORGE J. ZWEIBEL
JAMAE K. K. KAWAUCHI
Attorneys for Plaintiffs
ANNETTE KUULEI AGUSTIN,
GEORGE BRUNO AGUSTIN SR., and
JEFFREY KANE AGUSTIN