IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANNETTE KUULEI AGUSTIN,<br>GEORGE BRUNO AGUSTIN, SR.,<br>and JEFFREY KANE AGUSTIN, | )<br>)<br>)<br>) | CIV. NO. 09-00423 SOM/KSC |
| Plaintiffs, | )<br>) | ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS |
| vs. | )<br>)<br>) | |
| PNC FINANCIAL SERVICES GROUP,<br>INC., SUCCESSOR BY MERGER TO<br>NATIONAL CITY BANK; FIRST<br>AMERICAN TITLE COMPANY, INC.;<br>RONALD P. KANAKANUI, dba<br>OHANA FINANCIAL GROUP; JOHN<br>DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS,<br>PARTNERSHIPS, AND OTHER<br>ENTITIES 1-10 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>)<br>) | |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

I.      INTRODUCTION.

Plaintiffs Annette Agustin, her husband George Agustin, and their son Jeffrey Agustin refinanced their residential loan to obtain money for home improvements in early 2007.  They say they applied for a single loan but ended up with two loans on terms different from those they expected.  Two years after the transaction, they sought to rescind the loans, but they claim the lender rebuffed their attempt.  Plaintiffs assert in this lawsuit that Defendants have violated numerous state and federal laws, and that Plaintiffs are entitled to rescission.  Defendants PNC Bank, National Association ("PNC"), and First American Title

Company (which has joined in part of PNC's motion) ask the court to take judicial notice of certain facts and documents related to the loans and refinancing and then to dismiss many of Plaintiffs' claims.  This court denies in part the request for judicial notice and denies the motion to dismiss in its entirety.

II.      FACTUAL BACKGROUND.

Plaintiffs owned real property in Hawaii in late 2006 and early 2007.  Compl. ¶¶ 8-10, 19.  They claim that, in late 2006, Annette spoke with Defendant Ohana Financial Group (an alleged dba for Defendant Ronald P. Kanakanui) about refinancing the loan on the property to obtain cash for home improvements.  Id. ¶ 21.  Ohana Financial allegedly represented that it would refinance the loan with a single new loan requiring one monthly payment.  Id. ¶¶ 23, 24.  Ohana Financial and PNC[1] allegedly prepared a loan application and selected First American Title Company as the escrow depository.  Id. ¶¶ 26-28.

On February 12, 2007, Annette went to First American Title Company's office to sign loan documents.  Id. ¶ 27.  At First American Title Company, Annette was allegedly given no time to read what was presented to her and was instead shown only where to sign each document.  Id. ¶¶ 31-34.  Plaintiffs allege

---

[1]The Complaint alleges that National City Mortgage performed many acts associated with the loan.  National City Mortgage merged with National City Bank.  National City Bank then merged with and into PNC Bank, National Association.  This court refers to "PNC" when describing the lender sued in this case.

that the result was that Annette entered into two separate loans. Id. ¶¶ 29, 35, 38.  One loan was for $278,400, the other for $52,200, with PNC acquiring mortgages on Plaintiffs' property. Id. ¶¶ 37-40, 52.  According to Plaintiffs, the closing costs for obtaining the loans totaled about $24,000, and Plaintiffs received $35,000 in cash.  Id. ¶ 75.  In connection with each loan, Annette was given three copies of a Notice of Right to Cancel.  Id. ¶¶ 42-43, 57.  Plaintiffs complain that George and Jeffrey were never given such notices.  Id. ¶¶ 47, 48, 62, 63. Although Annette signed all documents on February 12, the notices listed the transactions as having occurred on February 9 and gave Annette until February 13 to cancel the transactions.  Ex. B, attached to Compl.

Plaintiffs allege that the loan documents incorrectly described the loan durations and the required monthly payments. They complain, for example, that the Fixed Rate Note for the second loan provided that the loan would be paid off in fifteen years with monthly payments of $406.01, while, in fact, monthly payments of $517.87 were required to pay off the loan in that time.  Compl. ¶¶ 52-53.  The monthly payments required by the loans allegedly exceeded Annette's monthly income.  Id. ¶ 92. PNC is now the servicer of the first loan, and Bank of America is the servicer of the second loan.  Id. ¶¶ 76-77.

In early 2009, Annette allegedly requested certain information and documents from PNC regarding the loans.  Id. ¶ 78.  Although PNC gave Annette some information, it allegedly did not respond to all of her requests.  Id. ¶¶ 79-80.  On May 7, 2009, Plaintiffs sought to rescind the loans.  Id. ¶¶ 86-88. Plaintiffs mailed a letter to PNC saying they were exercising their right to rescind.  Ex. C, attached to Compl.  Plaintiffs also mailed a letter to Bank of America, as the servicer and possible assignee of the second loan, notifying it that Plaintiffs were rescinding the second loan.  Ex. E, attached to Compl.  Plaintiffs say that no Defendant has returned any money in connection with the loans or taken any action to terminate the security interests relating to the loans.  Compl. ¶ 90.

Four months later, Plaintiffs filed a 50-page, 223-paragraph Complaint, seeking rescission, recoupment, injunctive relief, and damages under the Truth in Lending Act, Real Estate Settlement Procedures Act, and Hawaii law. Plaintiffs sue PNC, First American Title Company, Inc., and Ohana Financial Group.  PNC now moves to dismiss claims against it, and First American Title Company joins in the motion with respect to the dismissal of two claims.  PNC also asks the court to take judicial notice of many of the loan documents.

III.      LEGAL STANDARD.

Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 as amended by 275 F.3d 1187 (9th Cir.2001).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009).  "Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice."
Id. (citing Twombly, 550 U.S. at 554).

Dismissal under Rule 12(b)(6) may be based on either:
(1) lack of a cognizable legal theory, or (2) insufficient facts
under a cognizable legal theory.  Balistreri v. Pacifica Police
Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.
Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.
1984)).

IV.     ANALYSIS.

A.        Request for Judicial Notice.

PNC asks this court, pursuant to Rule 201 of the
Federal Rules of Evidence, to take judicial notice of many facts
and documents.  Specifically, PNC asks this court to take
judicial notice of facts that PNC says are derived from loan
applications, affidavits, a warranty deed, mortgages, adjustable
and fixed rate notes that Annette executed, HUD statements, and
Notices of Right to Cancel.  Also, PNC asks this court to take
judicial notice of certificates stating that National City
Mortgage merged with and is now owned by PNC.  Plaintiffs object
to most of the request, arguing that many of the facts are in
question, the documents are not authenticated, and the court
should not consider most of the evidence PNC presents when ruling
on its motion to dismiss.

This court agrees with Plaintiffs.  On the present motion, the court will not consider most of the facts or documents PNC asks this court to take judicial notice of.  Nor will the court take judicial notice of facts that are in dispute. As most of the facts are in dispute, the court denies most of PNC's request.

When ruling on a motion to dismiss, a court may consider documents central to the allegations in a complaint even if the documents are not attached to the complaint if the authenticity of the documents is undisputed.  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994); see also Del Puerto Water Dist. v. U.S. Bureau of Reclamation, 271 F. Supp. 2d 1224, 1233, n.4 (E.D. Cal. 2003) ("However, documents not physically attached to the complaint may nonetheless be considered by the court on a 12(b)(6) motion to dismiss if: (1) the complaint refers to such documents; (2) the document is 'central' to the plaintiff's claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").  If the complaint mentions a document but does not reference it extensively and the document is not integral to the complaint, the court should not consider the document.  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

The court declines to consider the documents PNC asks the court to take judicial notice of.  First, not all of the

documents are "central" to Plaintiffs' Complaint, as the
Complaint does not reference them extensively throughout the
Complaint.  Second, Plaintiffs dispute the authenticity of the
documents.

Judicial notice is governed by Rule 201 of the Federal
Rules of Evidence, which provides in relevant part:

(a) Scope of rule.

This rule governs only judicial notice of
adjudicative facts.

(b) Kinds of facts.

A judicially noticed fact must be one not
subject to reasonable dispute in that it is
either (1) generally known within the
territorial jurisdiction of the trial court
or (2) capable of accurate and ready
determination by resort to sources whose
accuracy cannot reasonably be questioned.

. . . .

(d) When mandatory.

A court shall take judicial notice if
requested by a party and supplied with the
necessary information.

(e) Opportunity to be heard.

A party is entitled upon timely request to an
opportunity to be heard as to the propriety
of taking judicial notice and the tenor of
the matter noticed. In the absence of prior
notification, the request may be made after
judicial notice has been taken.

(f) Time of taking notice.

Judicial notice may be taken at any stage of
the proceeding.

Fed. R. Evid. 201(a)-(f).

Rule 201 thus "permits a court to take judicial notice of adjudicative facts not subject to reasonable dispute." <u>United States v. Chapel</u>, 41 F.3d 1338, 1342 (9th Cir. 1994). "Adjudicative facts are simply the facts of the particular case." Advisory Committee Notes to Fed. R. Evid. 201.  A court may also take judicial notice of undisputed "matters of public record." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001). A court may take judicial notice of a public record not for the truth of the facts recited therein, but for the existence of the document.  <u>Id.</u> at 690.  However, this court has stated, "Judicial notice of adjudicative facts must be approached cautiously because it dispenses 'with traditional methods of proof' and removes the fact noticed from the province of the jury." <u>United States v. Jaimes</u>, 297 F. Supp. 2d 1254, 1256 (D. Haw. 2003) (citing Fed. R. Evid. 201, advisory committee notes to subdivision (b)). Accordingly, judicial notice is appropriate only when the matter is established "beyond reasonable controversy," <u>Lee</u>, 250 F.3d at 690, or is a fact "beyond reasonable dispute."  <u>Jaimes</u>, 297 F. Supp. 2d at 1256.

PNC asks this court to take judicial notice that "on or about" certain dates, Plaintiffs executed loan applications, mortgages, and received certain documents.  Request ¶¶ 1-3, 5-7, 9, 11-13.  However, these facts themselves are in dispute, as it

is unclear what date Plaintiffs prepared or submitted loan applications, signed mortgages, or received documents.  The exact dates of these acts are important in this case.  The court will not take judicial notice of a fact when the alleged fact is disputed.

In its fourth request, PNC asks this court to take judicial notice that "on or before February 16, 2007," a warranty deed was executed in which many individuals, including the Plaintiffs, conveyed their property interests to Annette and George.  PNC also asks the court to take notice that the "Warranty Deed was recorded on February 22, 2007."  This court will take judicial notice of public records, and recordation of this deed.  However, in so doing, the court does not rule on the veracity of anything in the deed.  To be perfectly clear, "The existence and authenticity of a document which is a matter of public record is judicially noticeable, . . . but the veracity and validity of their contents (the underlying arguments made by the parties, disputed facts, and conclusions of fact) are not."  Cactus Corner, LLC v. U.S. Dep't of Agric., 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004) (citing Lee, 250 F.3d at 690).  Thus, the court takes judicial notice only of the existence of the warranty deed, recorded on February 22, 2007, at 8:01 a.m.

In its eighth and tenth requests, PNC asks the court to take judicial notice of certain documents.  The court declines to

10

do so, as Plaintiffs question the authenticity of these documents and dispute facts in these documents.

In its fourteenth and fifteenth requests, PNC asks this court to take judicial notice of National City Mortgage Company's merger with and into National City Bank on October 1, 2008, and National City Bank's merger into PNC Bank on November 6, 2009. This court takes judicial notice of these facts, as they are not disputed by Plaintiffs and are capable of ready and accurate determination by sources whose authenticity cannot reasonably be questioned.

To the extent any party seeks judicial notice in the future, a request for judicial notice should include:

- whether the fact requested to be noticed is an adjudicative fact or not.

- whether the fact is to be noticed as a matter commonly known or as an ascertainable fact.

- a careful delineation of the fact to be noticed.

- the purpose and relevance of the noticed fact.

- authority for noticing the fact.

- the source of "indisputable accuracy" for an "ascertainable fact" under Rule 201(b)(2).

21 B Charles A. Wright & Kenneth Graham, Jr., Federal Practice and Procedure § 5017.1 at p. 264 (2d ed. 2005).

> B.        Dismissal is Denied With Respect to
>           Plaintiffs' Truth in Lending Act Rescission
>           Claims (Claims I, III, V) To The Extent The
>           Claims Do Not Seek Statutory Damages for TILA
>           Violations Occurring on the Date the
>           <u>Transactions Were Consummated.</u>

PNC says that Plaintiffs' claims seeking rescission[2]

fail.  In these claims, Plaintiffs allege that PNC violated the

Truth in Lending Act ("TILA") by failing to disclose material

information about the loans, failing to deliver to each Plaintiff

Notices of Right to Cancel, incorrectly dating the Notices of

Right to Cancel that Annette received, and separating the charges

for what was supposed to be a single loan transaction into two

separate disclosure statements.  Compl. ¶¶ 99-103, 115-120, 133-

---

[2]PNC does not move to dismiss any recoupment claim.  As a
general rule, "recoupment is in the nature of a defense arising
out of some feature of the transaction upon which the plaintiff's
action is grounded.  Such a defense is never barred by the
statute of limitations so long as the main action itself is
timely." <u>Bull v. United States</u>, 295 U.S. 247, 262 (1935).  The
Supreme Court has confirmed that recoupment claims survive TILA's
statute of limitations.  <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410,
418 (1998).  TILA makes recoupment available only as a "defense"
in an "action to collect a debt."  15 U.S.C. § 1640(e)**;** <u>see Roach
v. Option One Mortg. Corp.</u>, 598 F. Supp. 2d 741, 757 (E.D. Va.
2009) ("§ 1640(e) recognizes the fundamental difference between a
borrower's initiation of a lawsuit by filing of a claim, which
must occur within one year, and the defensive assertion of a TILA
violation in an action brought by a TILA creditor, which a
borrower may make at any time in response to the creditor seeking
payment of the debt.").  Other courts have held that, to
withstand a motion to dismiss a recoupment claim, a plaintiff
must show that "(1) the TILA violation and the debt are products
of the same transaction, (2) the debtor asserts the claim as a
defense, and (3) the main action is timely." <u>Moor v. Travelers
Ins. Co.</u>, 784 F.2d 632, 634 (5th Cir. 1986) (internal citations
omitted).

139.  Plaintiffs claim that, because of these errors, they have a three-year right to rescind the loans.  PNC makes four arguments as to Plaintiffs' failure to state a TILA rescission claim and lack of entitlement to a three-year rescission period.

First, PNC argues that Annette should have known she was entering into two loans.  Second, PNC says that, as it properly disclosed all necessary information, there is no actual TILA violation.  Third, PNC contends that, although the Notices of Right to Cancel that Annette signed were incorrectly dated, the parties amended the date to reflect the correct day the transaction occurred, February 12, and initialed the changes. Fourth, PNC says that, as Plaintiffs have not alleged a present ability to tender the outstanding loan amount, the rescission claims fail.  PNC's arguments are not persuasive.

In credit transactions in which a security interest in a consumer's residence is retained, TILA gives a consumer three days in which to rescind the transaction.  15 U.S.C. § 1635(a). If a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated.  12 C.F.R. § 226.23(a)(3); <u>Jackson v. Grant</u>, 890 F.2d 118, 120 (9th Cir. 1989).  Even a purely technical violation of TILA's disclosure provisions, including the failure to provide a borrower with a copy of the notice that includes the correct date the rescission

13

period expires, extends the duration of the right to rescind for three years.  See Semar v. Platte Vally Fed. Sav. & Loan Ass'n, 791 F.2d 699, 703-05 (9th Cir. 1986).

Plaintiffs allege that Ohana Financial prepared a loan application that misrepresented Annette's income, that PNC prepared documents relating to the loan as if two separate transactions were involved, and that Annette did not realize that she was entering into two loans.  Compl. ¶¶ 25, 27, 35.  PNC points to evidence that purports to show Annette was not ignorant of the loan terms and should have known that she was entering into two loans.  Specifically, PNC points to the actual loan applications that Annette allegedly completed.  Exs. A-D, attached to Request for Judicial Notice.  However, this court declines to look at evidence outside the pleadings on this motion to dismiss.  Thus, PNC's motion to dismiss Plaintiffs' TILA rescission claims based on Annette's knowledge that she was entering into two loans is not persuasive.

In arguing that all required information was disclosed, PNC points to evidence that purports to show that Annette and George received Notices of Right to Cancel.  PNC says Annette's and George's signatures on these documents create a presumption that they received the notices.  PNC says that Annette and George do not rebut this presumption because they do not dispute that they received the notices.  However, Plaintiffs allege that

14

George was not given this notice.  Compl. ¶ 47.  The Notices of Right to Cancel that Plaintiffs attached to the Complaint are not signed by Annette or George and only identify Annette as the borrower/owner.  Exs. A & B, attached to Compl.  Additionally, the Complaint alleges the Notice of Right to Cancel dated the loan transactions as occurring on February 9, 2007, and that Annette had three days to rescind from that date.  Compl. ¶ 33.  Plaintiffs say the actual date of the transaction was February 12, 2007.  This is sufficient to allege a three-year right to rescind.  See White v. Homefield Fin., Inc., 545 F. Supp. 2d 1159, 1167-69 (W.D. Wash. 2008) (noting that the plaintiff's incomplete and incorrectly dated notice extended the right to rescind for three years); 12 C.F.R. § 226.23(b)(1)(v).  While PNC argues that the date was corrected, this court, on this motion, accepts the allegations in the Complaint as true.

PNC asserts that, at the very least, Annette's son, Jeffrey, does not have a right to rescind and that his claims against PNC seeking rescission must be dismissed.  PNC argues that Jeffrey is not in the class of "consumers" that TILA protects.  Although Jeffrey was an owner of the property in issue at the time the loan documents were signed, he may not have been an owner at the time the security interest attached to the property.  Plaintiffs counter that Jeffrey indisputably had an ownership interest at the time the transactions were consummated, and it is irrelevant whether he had an interest when the security

15

interest attached.   On the present motion, PNC does not establish a right to prevail on this matter.

A consumer is a "person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to a security interest." 12 C.F.R. § 226.2(a)(11).  The regulations provide in pertinent part:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

12 C.F.R. § 226.23(a)(1).  Based on this language, PNC says that only a consumer whose "ownership interest is or will be subject to the security interest" has a right to rescind.  PNC argues that Jeffrey never had an ownership interest that would be subject to the security interest, because he deeded his interest to his parents shortly after the loan documents were signed and before the mortgages were recorded.  PNC points to a deed showing that Jeffrey conveyed his interest in the property to Annette and George on February 16, 2007.  Both the mortgage and the deed appear to have been recorded on February 22, 2007, at 8:01 a.m. PNC says that the security interest did not attach to the property until February 22, 2007.

16

Even when the court takes judicial notice of the deed, PNC fails to carry its burden of proving that, as a matter of law, only one who has a property interest at the time the security interest attaches to that property has a right to bring a TILA claim.  The TILA regulations specifically state that an owner whose security interest "will be retained or acquired" has a right to rescind.  12 C.F.R. § 226.23(a)(1).  At the time the transaction was consummated, if it is likely that a person's ownership interest will be subject to the security interest, that person at least arguably has a right to rescind.  Admittedly, it makes little sense to allow someone who deeds his property to someone else to bring, three years later, a rescission claim with respect to property he no longer owns.  However, on the present motion, PNC has the burden of establishing its entitlement to dismissal.  PNC offers not even one case supporting its construction of the relevant regulations.

Finally, PNC argues that Plaintiffs' TILA rescission claims fail because Plaintiffs have not alleged an ability to effect rescission.  PNC says that because they have failed to allege tender or a willingness and ability to tender the loan proceeds, the rescission claims are defective.  Plaintiffs counter that they do not need to allege tender.  This court agrees with Plaintiffs.

17

When a consumer exercises the right to rescind a
mortgage transaction, the consumer is not liable for any finance
charges, and any security interest in the consumer's home is
void.  15 U.S.C. § 1635(b); 12 C.F.R. § 226.15(d)(1).  After the
transaction is rescinded, the creditor must tender any money or
property given to anyone in connection with the transaction
within a specified time frame.  12 C.F.R. § 226.15(d)(2).  The
creditor's tender usually triggers the consumer's duty to return
any money or property that the creditor delivered to the
consumer, although a court can modify these procedures.  12
C.F.R. § 226.15(d)(2)-(4).  However, if a consumer's right to
rescind is contested by the creditor, "a court would normally
determine whether the consumer has a right to rescind and
determine the amounts owed before establishing procedures for the
parties to tender any money or property."  69 Fed. Reg. 16769,
16773 (Mar. 31, 2004).

The court is not convinced that Plaintiffs are required
to plead an ability to pay back the loan.  See Diana I Am v.
Nat'l City Mortg. Co., 2010 WL 571936,  (D. Haw. Feb. 17, 2010)
(citing Valdez. v. Am. Wholesale Lender, 2009 WL 5114305, at *4
(N.D. Cal. Dec. 18, 2009) (noting that district courts are split
as to whether the borrow must allege a present ability to
tender)).  TILA itself contains no such requirement.  On the

present motion, PNC does not establish that a failure to allege tender renders the rescission claims defective.

At the hearing on these motions, PNC distinguished between pleading an ability to tender, and failing to respond to a motion to dismiss seeking clarification on whether Plaintiffs can tender.  PNC argues that, even if there is no pleading requirement, Plaintiffs opposing a motion to dismiss must assert an ability to tender the loan proceeds.  But if Plaintiffs need not allege an ability to tender in stating a TILA rescission claim, they hardly need to allege such an ability in opposing a motion to dismiss.

At the same time, the court notes that Plaintiffs will ultimately have to tender the principal balance of the loans in connection with any rescission.  Plaintiffs' counsel appears fully aware of that obligation.  If a summary judgment motion is filed offering rescission if Plaintiffs tender, Plaintiffs may find themselves having to establish their ability to tender.  For now, however, Plaintiffs have sufficiently pled TILA claims seeking rescission.

C.      Dismissal is Denied With Respect to Plaintiffs' TILA Statutory Damages Claims (Claims II, IV, VI).

PNC argues that Plaintiffs' TILA claims seeking damages, Claims II, IV, and VI, fail because they are barred by a one-year statute of limitations.  Plaintiffs respond that they

only seek damages relating to PNC's failure to rescind in 2009, not relating to any TILA violation occurring during the 2007 loan transactions.  To the extent Plaintiffs seek damages for PNC's failure to rescind in 2009, these damage claims are not barred.

TILA allows for claims for money damages.  15 U.S.C. § 1640(a).  However, TILA states that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  When a TILA violation is based on an insufficient disclosure, the limitations period generally "starts at the consummation of the [loan] transaction."  King v. California, 784 F.2d 910, 915 (9th Cir. 1986); see also Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (holding that when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit). However, when a lender violates TILA by refusing to rescind a loan, a borrower has one year from the date of a lender's refusal to rescind to file suit for damages arising from that violation. Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002); see also 15 U.S.C. § 1635(g) ("In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section

1640 of this title for violations of this subchapter not relating to the right to rescind.").

Plaintiffs say that Defendants' "failure to allow rescission and to return to Plaintiffs the money paid in connection with" the transactions violated TILA.  Compl. ¶¶ 111, 126, 141.  This failure allegedly occurred in 2009, and Plaintiffs filed suit in September 2009.  Because PNC's refusal to rescind the loan following Plaintiffs' request occurred less than a year before Plaintiffs filed their claim for TILA damages, their claims asserting these violations are not time-barred. Accord Rowland v. Novus Fin. Corp., 949 F. Supp. 1447, 1455 (D. Haw. 1996).

D.        Dismissal is Denied With Respect to
          Plaintiffs' RESPA Claim (Claim VIII).

The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, requires a mortgage servicer to provide a written response acknowledging the receipt of a borrower's written request within 20 days and to take specified actions within 60 days.  See 12 U.S.C. § 2605(e).  Plaintiffs allege that they sent written requests to PNC for information relating to the loans, and that PNC failed to take action with respect to these requests.  Compl. ¶¶ 148-157.  PNC says that Plaintiffs' RESPA claim fails because Plaintiffs have failed to plead actual, pecuniary damages, which PNC says are an essential element of a

RESPA claim.  This court is unpersuaded that actual, pecuniary

damages must be pled.

Excluding instances involving a "pattern or practice of

non-compliance," "for each failure" of a defendant to comply with

§ 2605, an individual plaintiff is entitled to "any actual

damages . . . as a result of the [defendant's] failure."  12

U.S.C. § 2605(f)(1).  The statute expressly requires the

existence of damages caused by a mortgage servicer's failure to

take action; it does not expressly require allegations in a

pleading.  Nonetheless, a number of courts have interpreted the

statute as requiring a plaintiff to allege pecuniary damages to

state a claim.  See Martinez v. Am. Wholesale Lender, 2010 WL

934617, at *6 (N.D. Cal. Mar. 15, 2010); Johnson v. Wash. Mut.,

2010 WL 682456, at *7 (E.D. Cal. Feb. 24, 2010); see also

Hutchinson v. Del. Sav. Bank FSB,  410 F. Supp. 2d 374, 383

(D.N.J. 2006)(noting that a plaintiff "must, at a minimum, allege

that the breach resulted in actual damages").  A pleading

requirement has the effect of limiting a RESPA claim to

circumstances in which a plaintiff can show that a mortgage

servicer's failure has caused actual harm.  See Singh v. Wash.

Mut. Bank, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009)

(dismissing a RESPA claim because "plaintiffs have failed to

allege any facts in support of their conclusory allegation that

as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees").

Although Plaintiffs do not allege details of how any RESPA violation caused them pecuniary loss, they do allege actual damages, saying they need discovery before stating the amount of loss caused by the violation.  Compl. ¶ 157; Prayer for Relief ¶ 9; Opposition at 28.  That is sufficient at this stage of the case, even assuming RESPA includes a pleading requirement.  Of course, if Plaintiffs are unable to show, in a summary judgment proceeding, actual damages resulting from the RESPA violations, they may find their RESPA claim at an end.

      E.        Dismissal is Denied With Respect to Plaintiffs' Claim Alleging Violations of Hawaii Law (Claim IX).

Plaintiffs list thirteen ways in which PNC allegedly engaged in unfair or deceptive acts and practices in violation of Hawaii law.  Hawaii's statute governing unfair and deceptive trade practices("UDAPs") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Haw. Rev. Stat. § 480-2(a).  PNC argues that Plaintiffs' UDAP claim is preempted by federal law, or that it fails to state a claim.  This court addresses each argument.

1.        Plaintiffs' UDAP Claim is Not
          Preempted by Federal Law.

PNC argues that Plaintiffs' UDAP claim is preempted by certain federal laws to the extent the alleged unfair or deceptive acts violate TILA "or any other federal lending statute."  Motion at 20.  Plaintiffs respond that not all of the alleged unfair acts are preempted.  On the present record, PNC fails to show that Plaintiffs' claim is entirely preempted.

This court has previously stated:

> There are three circumstances in which state
> law is preempted under the Supremacy Clause,
> U.S. Const. art. VI, cl. 2: (1)  express
> preemption, when Congress explicitly defines
> the extent to which its enactments preempt
> state law; (2)  field preemption, when state
> law attempts to regulate conduct in a field
> that Congress intended the federal law to
> occupy exclusively; and (3)  conflict
> preemption, when it is impossible to comply
> with both state and federal requirements, or
> when state law stands as an obstacle to the
> accomplishment and execution of the full
> purpose and objectives of Congress.

Kajitani v. Downey Sav. and Loan Ass'n, 647 F. Supp. 2d 1208, 1216-1217 (D. Haw. 2008)(citing Bank of Am. v. City & County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002); Indus. Truck Ass'n, Inc. v. Henry, 125 F.3d 1305, 1309 (9th Cir. 1997)).

The business activities of national banks are controlled by the National Bank Act ("NBA") and regulations promulgated by the Office of the Comptroller of the Currency.  12 U.S.C. §§ 24, 93a, 371(a).  The NBA authorizes national banks to

24

engage in mortgage lending.  12 U.S.C. § 371.  It also provides

that banks have the power to exercise "all such incidental powers

as shall be necessary to carry on the business of banking,"

including "by loaning money on personal security."  12 U.S.C.

§ 24 (seventh).  Although there is normally a presumption against

the preemption of state laws, the Supreme Court, in the banking

context, has "interpreted grants of both enumerated and

incidental powers to national banks as grants of authority not

normally limited by, but rather ordinarily preempting, contrary

state law."  Watters v. Wachovia Bank, N.A., 550 U.S. 1, 12

(2007) (internal quotations omitted); Wells Fargo Bank N.A. v.

Boutris, 419 F.3d 949, 956 (9th Cir. 2005).

While the NBA "shields national bank[s] from unduly

burdensome and duplicative state regulation," federally chartered

banks remain "subject to state laws of general application in

their daily business to the extent such laws do not conflict with

the letter or the general purpose of the NBA."  Watters, 550 U.S.

at 10.  Thus, under the NBA, "states retain some power to

regulate national banks in areas such as contracts, debt

collection, acquisition and transfer of property, and taxation,

zoning, criminal and tort law."  Bank of Am. v. City and County

of San Francisco, 309 F.3d 551, 559 (9th Cir. 2002).

The OCC regulations prescribe the preemptive reach of

the NBA.  With respect to a bank's lending powers outside the

25

real estate context, the OCC regulations provide in pertinent part:

>  (d) Applicability of state law:
>
>>  (1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.
>>
>>  (2)  A national bank may make non-real estate loans without regard to state law limitations concerning:
>>
>>>  . . . .
>>>
>>>  (iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon passage of time or a specified event external to the loan;
>>>
>>>  . . . .
>>>
>>>  (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit

26

> > contracts, or other
> > credit-related documents.
> >
> > . . . .
> >
> > (x) Rates of interest on loans.

12 C.F.R. § 7.4008.

The preemptive reach of the NBA in relation to a bank's

real-estate loan power is set forth in a separate regulation:

> (a) Except where made applicable by Federal
> law, state laws that obstruct, impair, or
> condition a national bank's ability to fully
> exercise its Federally authorized real estate
> lending powers do not apply to national
> banks.  Specifically, a national bank may
> make real estate loans . . . without regard
> to state law limitations concerning:
>
> > . . . .
>
> > (4) The terms of credit, including
> > schedule for repayment of principal
> > interest, amortization of loans,
> > balance, payments due, minimum
> > payments, or term to maturity of
> > the loan, including the
> > circumstances under which a loan
> > may be called due and payable upon
> > passage of time or a specified
> > event external to the loan;
> >
> > . . . .
> >
> > (9) Disclosure and advertising,
> > including laws requiring specific
> > statements, information, or other
> > content to be included in credit
> > application forms, credit
> > solicitations, billing statements,
> > credit contracts, or other
> > credit-related documents;

27

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

(b)  State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:

(1) Contracts;

(2) Torts;

. . . .

(5) Rights to collect debts;

. . . .

(9) Any other law the effect of which the OCC determines to be incidental to the real estate lending operations of national banks or otherwise consistent with the powers and purposes set out in § 34.3(a).

12 C.F.R. § 34.4.

PNC argues that, as it is a national bank, its actions are controlled by the NBA.  PNC appears to be arguing conflict preemption, that is, that the application of Hawaii law in this context conflicts with the NBA regulations.  Specifically, PNC appears to be arguing that Plaintiffs' state-law claim is preempted by 12 C.F.R. § 34.4 or 12 C.F.R. § 7.4008.  However, because PNC fails to articulate how state law conflicts with

these regulations, this court does not, on the present record, dismiss based on conflict preemption.

The court notes that express preemption is inapplicable, as the NBA does not expressly preempt generally applicable laws regarding unfair business practices, such as Hawaii's UDAP law. See Watters, 550 U.S. at 13. Rather, the specific examples in the OCC regulations suggest that the NBA only expressly preempts laws requiring particular types of disclosures, like the APR in a TILA disclosure. See Davis v. Chase Bank USA, N.A., 650 F. Supp. 2d 1073, 1085 (C.D. Cal. 2009). Nor does PNC assert field preemption. Indeed, some courts have stated that the NBA is structured to implicate only conflict preemption. See Munoz v. Fin. Freedom Senior Funding Corp., 567 F. Supp. 2d 1156, 1162 n.4 (C.D. Cal. 2008)

When analyzing whether a plaintiff's state-law UDAP claim is in conflict with the NBA, a court must consider whether "the legal duty that is the predicate of Plaintiffs' state law claim falls within the preemptive power of the NBA or regulation promulgated thereunder." Rose v. Chase Bank USA N.A., 513 F.3d 1032, 1038 (9th Cir. 2008). In the context of generally applicable laws, a court's focus is essentially on the law "as applied." Davis, 650 F. Supp. 2d at 1081. Thus, this court analyzes the specific legal duties alleged in the Complaint as

forming the bases for the state-law claim to determine whether those specific legal duties conflict with the NBA.

This court has held that a "specific legal duty" arises from facts alleged in the complaint that form the basis of a state-law claim.  In <u>Kauinui v. Citibank (South Dakota) N.A.</u>, 2009 WL 3530373, at *8 (D. Haw. Oct. 28, 2009), the plaintiff borrower alleged that the defendant lender had failed to properly disclose the APR or finance charge in a billing statement, or alternatively, that such disclosures were misleading.  The plaintiff asserted a TILA claim and a Hawaii UDAP claim.  The basis of the UDAP claim was that (1) the defendant had allegedly violated TILA, and (2) the defendant's "charges and disclosures in connection with the above-described extension of credit" were allegedly unfair and deceptive.  <u>Id.</u> at *6.  The court analyzed these allegations to determine whether the application of Hawaii law would conflict with the NBA.  The court concluded that the UDAP claim predicated on TILA violations and disclosures was preempted.  <u>Id.</u> at *8 (noting that because the Complaint "only alleges violations based on disclosure requirements in periodic billing statements," it was preempted because it "exclusively addresses matters covered in [the OCC regulations].").

Similarly, federal courts, construing Unfaiir Competition Law ("UCL") claims under California law, have analyzed preemption by determining whether the alleged violation

30

or conduct underlying the UCL claims was in conflict with the OCC regulations or the NBA.  For example, in one case, the plaintiffs alleged that the defendants had violated a California law that prohibited banks from charging late fees for credit card payments posted on the first day after a bank holiday, when a fee would not have been charged if payment had been posted on the holiday. Miller v. Bank of Am., N.A. (U.S.A.), 88 Cal. Rptr. 3d. 723, 725 (Cal. Ct. App. 2009).  Bank of America's violation of this California law formed the basis of the plaintiffs' UCL claim. The court found that the specific California statute was preempted, as its focus on payment due dates was directly in conflict with the OCC regulations providing that a bank can make loans without regard to state law regulating terms of credit, including the "schedule for repayment" and "payments due."  Id. at 728.  The UCL claim was also preempted, as the specific legal duty that formed the basis of the UCL claim conflicted with OCC regulations.

Similarly, in Rose v. Chase Bank, USA, 513 F.3d 1032, 1035 (9th Cir. 2008), the plaintiffs asserted that the defendant had violated a state law requiring credit card issuers to disclose certain terms on convenience checks.  Id. at 1035. These preprinted checks were sent by banks to individuals as attachments to letters or invitations from banks.  If a check was torn off and used, the user's credit account was charged.  Id. at

1034-35.   The alleged violation of state law formed the basis of UCL claims asserting unlawful business practices.   The Ninth Circuit held that the specific state law requiring disclosures on a check was preempted by the NBA.   The power to "loan money on personal security" that banks have includes the bank's power to extend credit to its cardholders via convenience checks.   <u>Id.</u> at 1037.   Thus, the state law setting certain requirements regarding these checks conflicted with the NBA.   <u>Id.</u> at 1038.   The UCL claim asserting unlawful business practices based on the defendant's failure to disclose information was also preempted. <u>Id.</u>

In contrast, in <u>Jefferson v. Chase Home Finance</u>, 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008), the court found that a law regulating generally applicable duties was not preempted.   In that case, the plaintiff had refinanced his home and had thought that prepayments would go towards reducing the loan principal. <u>Id.</u> at *4.   He sued, asserting a UCL claim predicated on the defendants' allegedly false advertising and misrepresentations as to how prepayments would be applied.   <u>Id.</u> at *10.   The court held that the plaintiff's UCL claim was not preempted.   The court stated:

> The core of each of Plaintiff's causes of
> action is the claim that Chase misrepresented
> how it would credit prepayments into
> Plaintiff's account.   Plaintiff also contends
> how it would credit prepayments is an unfair
> business practice under the UCL . . . .

> Plaintiff does not claim that California
> consumer protection laws require Chase to
> service or process loans, include specific
> content in its disclosures, or handle
> repayment of loans in a particular manner-
> requirements that would be preempted.  See 12
> C.F.R. § 34.4(a).  Instead Plaintiff claims
> that the laws require Chase to refrain from
> misrepresenting the manner in which it *does*
> service loans.  The core issue in this case
> will not be whether or when Chase is
> permitted to place payments is suspense
> accounts, but whether Chase misrepresented to
> customers what it would do with their
> payments.

Id. at *13.

Courts appear to distinguish between claims that arise from generally applicable duties such as contractual obligations and a broad duty to refrain from deceptive acts, and claims that rest on alleged violations of statutes specifically aimed at NBA activities.  See Davis, 650 F. Supp. 2d at 1084.  The former are not preempted, see Jefferson, 2008 WL 1883484, at *10, but the latter are, see Rose, 513 F.3d 1032 at 1037.

This court turns therefore to the issue of whether Plaintiffs are asserting violations of statutes that seek to regulate specific matters expressly regulated by any of the provisions cited by PNC.  The court concludes that at least parts of Plaintiffs' UDAP claim are not preempted.

Plaintiffs allege the following acts as the bases of their UDAP claim:

(1) Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.

(2) Failing to adequately disclose the true costs and risks of the subject loan(s) and its/their inappropriateness for Plaintiff Annette Agustin.

(3) Making a refinance loan or loans that resulted in little net economic benefit to Plaintiffs with the primary objective of generating fees.

(4) Splitting the loan into two separate transactions as a means to make a high loan-to-value mortgage loan and to collect additional fees and interest.

(5) Using a balloon payment to conceal the true cost and burden of the refinancing.

(6) Making the subject loan(s) based on the value of the collateral, without regard to Plaintiff Annette Agustin's ability to repay the loan(s).

(7) Failing to disclose that the loan would be split in to two loans.

(8) Failing to separately disclose the fees and charges imposed in connection with the First Loan.

(9) Making inconsistent representations regarding the monthly payment amount in the First Loan.

(10) Failing to separately disclose the fees and charges imposed in connection with the Second Loan.

(11) Falsely representing that making the disclosed payments in the Second Loan would fully pay it off in 15 years.

(12) Falsely representing that Plaintiff Annette Agustin would be required to pay a

$200.00 "administration fee" in connection
with the Second Loan.

(13) Attempting to deprive Plaintiffs of
their legal right to cancel the subject
loan(s).

Compl. ¶ 162.

It may be that PNC, following discovery, can show that
some of the acts are directly covered by federal law.  If that
occurs, the UDAP claim may be narrowed.  At this point, however,
the court cannot say, based solely on the allegations in the
Complaint, that the UDAP claim is preempted.  The heart of the
claim appears to be that Defendants allegedly represented that
Plaintiffs would receive one loan, when in fact they received
two.  The specific legal duty at issue seems to be the duty to
disclose, and represent accurately, material information relating
to a contract.  This is a general duty applicable to any
contract, not a duty created by a federal statute or regulation.
Plaintiffs are not contending that PNC violated Hawaii's UDAP law
by failing to adequately disclose the APR, see Kauinui, 2009 WL
3530353, or to comply with a state law regarding payment and
specific dates, see Rose, 513 F.3d 1032.

On the present motion, PNC fails to carry its burden of
proving that a UDAP claim conflicts with federal law.  PNC's
citations to Naulty v. Greenpoint Mortgage Funding, Inc., 2009 WL
2870620 (N.D. Cal. Sept. 3, 2009), and Lopez v. Wachovia
Mortgage, 2009 WL 4505919 (E.D. Cal. Nov. 20, 2009), are

35

unavailing.  Both cases discuss whether state law claims are
preempted by the Home Owner's Loan Act.  The Home Owner's Loan
Act is enforced by the Office of Thrift Provision.  As 12 C.F.R.
§ 560.2 makes clear, OTS "occupies the entire field of lending
regulation for federal savings associations."  Indeed, many
courts have cautioned against applying the OTS/HOLA analysis in
the OCC context.  See, e.g., Munoz v. Fin. Freedom Senior
Funding, 567 F. Supp. 2d 1156, 1168 n.2 (C.D. Cal. 2008) (noting
that the NBA is structured to implicate only conflict preemption,
while HOLA occupies the entire field).  One court has stated,
"The language employed by the OCC in its regulations and
interpretive letters evidences that application of a more narrow
preemption analysis is more appropriate than that applied [in OTS
and HOLA regulations]."  Gutierrez v. Wells Fargo Bank, N.A.,
2008 WL 4279550, at *12 (N.D. Cal. Sept. 11, 2008).

        PNC points to paragraph 163 of the Complaint, which
states: "[PNC's] violations of TILA in connection with the
subject loan(s) constitute UDAP's in violation of H.R.S. §§ 480-
2(a) and/or 481A-3."  PNC contends that federal preemption
principles prevent TILA violations from being pursued under state
law.  As noted earlier, this court has held that, to the extent a
Hawaii UDAP claim against a bank rests explicitly on a specific
TILA violation, it is preempted by the NBA.  See Kauinui, 2009 WL
3530373 (noting that state law claims based on TILA violations

36

are clearly preempted) (citing Kajitani, 647 F. Supp. 2d at

1220).  However, paragraph 163 only states that TILA violations

are UDAPs, not that Plaintiffs' UDAP claims replicate or are

limited to their TILA claims.  The list of 13 UDAPs does not

appear to merely restate TILA violations or to be confined to

TILA violations.  Accordingly, paragraph 163 does not require

dismissal of Plaintiffs' UDAP claim.

     This court also notes that, while a plaintiff may not

recover under both TILA and the UDAP statute for precisely the

same matter, not all allegations stemming from the same general

set of facts necessarily implicate precisely the same matter.  A

case may well involve both TILA and UDAP claims focusing on

related but different factual or legal bases.  As the court said

in Kajitani:

> Comparing TILA and section 480-2, the Hawaii
> Supreme Court has noted:
>
> > TILA and HRS § 480-2 have differing
> > "scope and application."  TILA was
> > intended to ensure informed credit
> > decisions by consumers, whereas HRS
> > § 480-2 was designed to prevent
> > fraudulent business practices
> > directed against consumers.  Thus,
> > although the ultimate objective of
> > both statutes is consumer
> > protection, they effect their
> > common purposes by non-coextensive
> > means.

Kajitani, 647 F. Supp. 2d at 1220 (citing Haw. Cmty Fed. Credit

Union v. Keka, 94 Haw. 213, 229 n.15, 11 P.3d 1, 17 n.15 (2000)

(quoting Riopta v. Amresco Residential Mortg. Corp., 101 F. Supp. 2d 1326, 1333 (D. Haw. 1999)).[3]

                    2.          Plaintiffs State a UDAP Claim
                                Against PNC.

          PNC says that, even if the UDAP claim is not preempted, it fails to state a claim.  First, PNC contends that the "nature and the manner" of the alleged acts are so vaguely presented that PNC cannot adequately respond.  Second, PNC proffers evidence that the allegations may be untrue.  Both arguments fail.

          The allegations concerning the nature and manner of the allegedly wrongful acts are not so vaguely stated that PNC cannot respond adequately.  The acts forming the bases of Plaintiffs' UDAP claim all relate to a refinancing transaction that occurred on or about February 12, 2007.  The alleged  misrepresentation and failure to disclose occurred during the transaction, in the loan application, or during that short period of time.  The

_____

          [3]The court is aware that some decisions in this district have sometimes been read by litigants as suggesting that a TILA claim and a UDAP claim based on exactly the same matter are permissible.  The court questions, however, whether such a reading is justified, or whether exactly the same matter was at issue under both TILA and UDAP.  See, e.g., Oliveira v. Alliance Bancorp, Civ. No. 07-00050, Doc. No. 24, at 7 (D. Haw. Apr. 20, 2007) (described in Kauinui, 2009 WL 3530373, at *7, as having a TILA claim based on documentary issues and a UDAP claim based on oral statements, which are not covered by TILA).  Preemption may not even have been raised as an issue in such cases.  See id. (denying a motion to dismiss and permitting both a TILA claim and a UDAP claim, but not addressing preemption because preemption was not argued to the court, given the movant's focus on the alleged inapplicability of TILA in the first instance).

events of that short period are sufficiently set forth to allow PNC to defend itself.

PNC then argues that Plaintiffs' allegations of unfair and deceptive practices fail because they allege instances that did not occur.  PNC says specifically that Plaintiffs are incorrect in alleging that PNC failed to adequately disclose information, as PNC made no representations to Plaintiffs at all. Compl. ¶ 163 (2), (7)-(12).  However, Plaintiffs allege that Ohana Financial, the company that did allegedly make representations to Plaintiffs, acted as PNC's agent.  Id. ¶ 93. Plaintiffs also allege that PNC improperly prepared loan documents for two separate transactions, and that Plaintiffs entered into a transaction with PNC on February 12, 2007.  Id. ¶¶ 28, 36.  Plaintiffs have sufficiently alleged that PNC failed to disclose information and made misrepresentations.

Finally, PNC asks this court to focus on whether the allegedly deceptive practice is "likely to mislead customers." PNC argues that, as what Plaintiffs say is unfair and deceptive is not a practice likely to mislead anyone, there can be no UDAP claim.  PNC cites in support of this argument a Ninth Circuit case stating that "the fact-finder will focus on the standardized written materials . . . to determine whether those materials are likely to mislead customers acting reasonably under the circumstances." Yokoyama v. Midland Nat'l Life Ins. Co., 2010 WL

424817, at *5 (9th Cir. 2010).  Although a fact-finder must

determine whether a reasonable person would find a particular act

deceptive, that objective inquiry is not a matter this court can

dispose of at this stage of the case.  See Courbat v. Dahana

Ranch, Inc., 111 Haw. 254, 263, 141 P.3d 427, 436 (2006) (noting

that the application of an objective reasonable person standard

is ordinarily for the trier of fact).  On this motion to dismiss,

Plaintiffs' allegations suffice.

>           F.          Dismissal is Denied With Respect to
>                       Plaintiffs' Claim for Civil Conspiracy (Claim
>                       XIII).

Plaintiffs allege that Ohana Financial engaged in

fraud.  Plaintiffs allege that all Defendants, including PNC,

entered into an agreement to further that fraudulent conduct.

Compl. ¶¶ 198-200.  PNC says this civil conspiracy claim fails

because Plaintiffs do not allege that PNC itself engaged in the

underlying fraud.  This court disagrees.

Under Hawaii law, "'the accepted definition of a

conspiracy is a combination of two or more persons [or entities]

by concerted action to accomplish a criminal or unlawful purpose,

or to accomplish some purpose not in itself criminal or unlawful

by criminal or unlawful means.'"  Annan-Yartey v. Honolulu Police

Dep't, 475 F. Supp. 2d 1041, 1050 (D. Haw. 2007) (quoting

Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Haw.

224, 982 P.2d 853, 881 (1999)).  Since "there can be no civil

40

claim based upon a conspiracy alone," <u>Weinberg v. Mauch</u>, 78 Haw. 40, 890, P.2d 277, 286 (1995), a plaintiff must allege an underlying actionable claim.  <u>See</u> <u>Ellis v. Crockett</u>, 51 Haw. 45, 451 P.2d 814, 822-23 (1969) (the plaintiffs' failure to allege an underlying claim of deceit precluded them from alleging conspiracy to deceive).

Plaintiffs allege that Ohana Financial engaged in fraud.  Plaintiffs allege that Ohana Financial falsely represented the costs of the loans, hid the fact that there would be two loans, misrepresented Annette's income on the loan documents, and misstated the amount that Annette was required to pay.  Compl. ¶¶ 186-192.  Plaintiffs allege that all Defendants, including PNC, had an agreement to further the fraud.  Compl. ¶ 199.  PNC says that because Plaintiffs do not allege that PNC itself made fraudulent representations, or that Defendants agreed to make fraudulent representations, this claim fails.  Just because PNC did not engage in fraud or agree to the alleged fraud in 2007 does not mean that PNC did not conspire to further that fraudulent conduct.  Dismissal of this claim is denied.

G.      Dismissal is Denied With Respect to Plaintiffs' Aiding And Abetting Claim (Claim XIV).

Plaintiffs allege that PNC, Ohana Financial, and First American engaged in wrongful acts that injured Plaintiffs, and that they provided substantial assistance to other Defendants

that engaged in wrongful conduct.  Compl. ¶¶ 203-206.  PNC
alleges that this claim fails, as Plaintiffs provide no factual
support for aiding and abetting.  PNC says it is impossible to
ascertain which allegations form the basis of PNC's claim.

This court sympathizes with PNC, as very few of the
over 200 paragraphs in the Complaint relate to Plaintiffs' aiding
and abetting claim.  However, the claim is about a transaction
that occurred on or about February 12, 2007.  The aiding and
abetting must relate to actions that occurred on or about that
day.  As that period is limited enough that PNC can pick out
specific occurrences, the court denies the motion to dismiss this
claim.

IV.        <u>CONCLUSION.</u>

The court denies PNC's motion to dismiss.  This court
also denies the request in Plaintiffs' Opposition memorandum for
sanctions, as such a request should be made in a separate, fully
briefed motion.  In so stating, this court is not indicating that
any such motion would be meritorious.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 15, 2010.



　　/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Civil No. 09-423 SOM/KSC; Order Denying Defendant's Motion to Dismiss.